Jesse P. PINEDA and Zenaida
Pineda, Appellants,

v.

PMI MORTGAGE INSURANCE
COMPANY, Appellee.

No. 13–91–239–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 19, 1992.
Rehearing Overruled Nov. 19, 1992.

Wilmot McCutchen, McCutchen & Esquivel, Houston, for appellants.

Martin Hotchkiss, Calvin A. Barker, Barker, Block & Muscat, Dallas, Earl Wayne Sealy, Long, Burner, Parks & Sealy, Austin, for appellee.

Before NYE, C.J., SEERDEN, J., and GERALD T. BISSETT, J., Assigned.[1]

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.

## OPINION ON MOTION FOR REHEARING

BISSETT, Justice (Assigned).

The response by PMI in opposition to the Pinedas' Motion for Extension of Time to File a Motion for Rehearing and the Motion for Rehearing filed by the Pinedas has convinced us that there are certain inaccuracies in the opinion heretofore announced by this Court. We, therefore, withdraw the original opinion and substitute this opinion in lieu thereof as the opinion of this Court.

Jesse and Zenaida Pineda (the "Pinedas") appeal from a summary judgment granted in favor of PMI Mortgage Company ("PMI") on its deficiency claim and on the counterclaim of the Pinedas, and from the denial of the Pinedas' cross-motion for partial summary judgment on their claims.

PMI filed suit against the Pinedas on March 29, 1990. PMI, the mortgage insurer, which had insured the Pinedas' mortgage, claimed that, under its mortgage insurance policy, it was entitled to be subrogated to a lender deficiency claim arising out of a certain nonjudicial foreclosure sale on June 3, 1986. The Pinedas, in their original answer, alleged that PMI's action was time-barred under the 3–year limitations period in the mortgage insurance policy which PMI had appended to its original petition. They also challenged the equitable standing of PMI to be subrogated under the insurance contract.

PMI abandoned its original subrogation theory and filed its first amended petition on June 21, 1990. In its amended petition, PMI claimed to be legally rather than equitably entitled to sue for the alleged deficiency. The basis for PMI's standing was a certain "Subrogation and Assignment Agreement" executed by United Savings Association of Texas, F.S.B., the successor entity of the original noteholder, on May 29, 1990 (after this suit had already been filed).

Gov't Code Ann. § 74.003 (Vernon 1988).

The Pinedas, in their first amended answer and counterclaim filed a general denial and raised the following affirmative defenses to PMI's suit on the note: 1) that PMI was not the noteholder, 2) that the four-year statute of limitations barred PMI's suit on the note, 3) that the note had been paid by PMI itself, 4) that PMI's suit against its own policyholder was unconscionable, 5) that the mortgagee had failed to mitigate damages, 6) that PMI charged interest in excess of double the legal rate during the statutory interest-free period, 7) that PMI was engaging in champerty, 8) that the contingent fee of PMI's attorneys was unconscionable, and 9) that the assignment of the note to PMI was void for lack of consideration. In their first amended counterclaim, the Pinedas pleaded the following causes of action: 1) usury, 2) deceptive trade practices, 3) violation of the Texas Debt Collection Act, 4) bad faith, 5) violation of art. 21.21 of the Texas Insurance Code, and 6) violation of § 27.01 of the Texas Business and Commerce Code.

PMI obtained an endorsement of the subject note from the original noteholder on August 22, 1990. PMI then filed its second amended petition, now suing as a putative noteholder rather than as an assignee or subrogee of a deficiency claim.

On or about October 31, 1990, PMI filed its second motion for summary judgment (the first was abandoned), seeking summary judgment not only on its noteholder claim but also against all of the Pinedas' counterclaims. The Pinedas filed a timely response and also a supplemental response to PMI's supplement to its motion for summary judgment.

The Pinedas filed a cross-motion for partial summary judgment on or about January 28, 1991, limited to PMI's noteholder claim. PMI did not file a timely response. On March 4, 1991, both PMI's motion for summary judgment and the Pinedas' cross-motion were heard together by the trial court. PMI's motion was granted in its entirety, and the Pinedas' was denied.

Judgment in favor of PMI was signed on March 4, 1991, which decreed that PMI recover from the Pinedas: 1) $14,170.04 as the principal amount due on the note, 2) $8,839.01 as prejudgment interest as the note rate on such sums from June 3, 1986, until March 4, 1991, 3) $131.00 as costs of suit, including Court costs, 4) $6,932.72 as attorney's fees, 5) $7,500.00 as additional attorney's fees in the event of an appeal by the Pinedas to the Court of Appeals, 6) $5,000.00 as additional attorney's fees in the event PMI is required to respond to an Application for Writ of Error in the Texas Supreme Court, 7) $4,000.00 as additional attorney's fees in the event the Supreme Court grants Writ of Error, and 8) interest at the note rate on the judgment amount from the date of judgment until paid. All relief on the Pinedas' counterclaims was denied, as were their cross-motions for summary judgment. The judgment, by disposing of all issues before the Court, is final. The Pinedas have timely perfected an appeal from the judgment.

## IN GENERAL

The Pinedas executed a note in the original principal sum of $64,300, dated October 7, 1981, payable to the order of Houston First American Savings Association in monthly installments of $655.22, commencing December 1, 1981, together with interest thereon at the rate of 11.875% per annum. The note was secured by a Deed of Trust, of even date therewith, covering certain real property in Harris County, Texas. The Pinedas defaulted in their payments pursuant to the note and foreclosure resulted. The substitute trustee conveyed the subject real property to United Savings Association of Texas, "successor to Houston First American Savings Association" by deed dated June 23, 1986. United Savings Association assigned the original note to PMI on May 29, 1990, pursuant to a subrogation and assignment agreement. The note was endorsed to PMI by United Savings Association on August 22, 1990.

PMI, by "Commitment for Insurance," dated August 28, 1981, advised Houston First American Savings Association that it would insure the Pinedas' loan in the amount of $64,300. The Commitment provided in relevant part:

In consideration of the premium set forth below, your application has been examined and with reliance on representations therein, the Company hereby issues to you a Commitment for Insurance of the loan herein described, subject to the terms and conditions on the reverse side hereof, and subject to any special or general conditions that may be set forth below.

In consideration of the payment of premium set forth below, the Company hereby insures the lender against loss of the mortgage loan hereinafter described, subject to the terms and conditions contained on the reverse side hereof.

The real property securing the sale brought $58,646.42 at the foreclosure sale, leaving a deficiency of $14,170.04. PMI received a claim on the policy of insurance from United Savings Association for payment on the policy that had been theretofore issued by PMI to Houston First American Savings Association as set out in the "Commitment for Insurance." The claim ($19,789.24) was paid by PMI to United Savings Association on September 11, 1986. The deed of trust required the Pinedas to pay to the original noteholder in monthly installments, in addition to payment on the note and payments for taxes and assessments, "one-twelfth of yearly premium installments for mortgage insurance." The Pinedas, the mortgagors, paid the monthly (one-twelfth) of the mortgage insurance premiums to the original noteholder and mortgagee, or its successor, until date of default. The mortgagee paid the mortgage premiums to PMI.

### PMI'S SUMMARY JUDGMENT

The Pinedas contend in their first point of error that the trial court erred in granting summary judgment in favor of PMI on its claim as a noteholder. They advance numerous arguments in support of their contentions.

 First, the Pinedas argue that their note was completely paid off by proceeds of the trustee's sale plus the claim paid by PMI to its insured lender, leaving no deficiency on which PMI could sue. What PMI paid to the old United Savings Association of Texas, was the claim for payment on a policy of insurance that had been issued by PMI to Houston First American Savings Association, the original lender. The uncontroverted summary judgment evidence was that PMI paid a percentage of the original lender's total submitted claim. The uncontroverted affidavit of David Peterson, part of PMI'S summary judgment proof, reflected that "[t]he payment made to the lender by PMI was based upon a claim presented by the lender to PMI pursuant to its policy of insurance and was not made on behalf of the borrowers to extinguish the deficiency." PMI's claim payment was pursuant to its contractual obligation to the *lender* under the *lender's policy* of insurance. The Pinedas' characterization of PMI's claim payment as payment on the Pinedas' behalf or of the Pinedas' deficiency obligations to the lender ignores the summary judgment proof, commercial reality of the relationship between PMI and its insured lender, and the nature of private mortgage insurance as held in Texas cases on the subject.

The Pinedas' first point of error is internally inconsistent. On the one hand, they contend that the note was completely paid off so no deficiency remained on which PMI could sue; on the other hand, they state:

> the issue is not whether the deficiency was paid but whether this payment by PMI to the note holder should be applied against the Pinedas' indebtedness. In other words, may the note holder or its assignee, recover the same deficiency twice?

The uncontroverted summary judgment evidence showed that after PMI paid the lender's claim pursuant to PMI's mortgage insurance policy, the lender then assigned to PMI all rights the lender had against the borrowers under the loan documents and negotiated and transferred the Pinedas' note to PMI. The lender was paid its claim and never recovered "the deficiency," even though the amount of money paid in the claim exceeded the amount of the deficiency. In consideration of PMI's payment of

the lender's claim, the lender assigned its rights under the loan documents to pursue claims for deficiency, and otherwise, against the Pinedas. Thus, PMI, the present note holder, has not sought to "recover the same deficiency twice." Nor has PMI, prior to the filing of this lawsuit, sought to recover any deficiency against the Pinedas and therefore could not have sought to "recover the same deficiency twice."

The Pinedas further argue that they were "insureds," in privity with PMI or otherwise beneficiaries of the mortgage insurance policy PMI issued to the lender. Indeed, each of the cases the Pinedas cite in their first point of error necessarily relies on some sort of privity or beneficiary status. Two Texas cases, which we follow in deciding the issue presented in the first points are *Hunt v. Jefferson Sav. & Loan Ass'n*, 756 S.W.2d 762 (Tex.App.—Dallas 1988, writ denied), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989), and *Shields v. Atlantic Fin. Mortgage Corp.*, 799 S.W.2d 441 (Tex.App.—El Paso 1990, no writ), both of which recognize and hold that the mortgage insurance in these cases was for the benefit of the lender and *not* the borrower. In *Hunt*, Douglas W. and William J. Hunt executed and delivered five promissory notes totalling $263,000, secured by a deed of trust on certain properties to the Congressional Mortgage Corporation. Thereafter, Congressional transferred the notes and all its interest in the properties to Jefferson Savings & Loan Association. The Hunts defaulted on the payments on the notes and Jefferson foreclosed. The trustee sold the properties for $125,280, resulting in a deficiency of $182,498.77. Jefferson filed suit for the deficiency. The trial court granted Jefferson's motion for summary judgment and denied Hunt's counterclaims. The Court of Appeals affirmed. Jefferson demanded and obtained private mortgage insurance on the loan and the Hunts claimed that they were entitled to a credit on the deficiency for the amount of insurance proceeds which Jefferson received from the insurance company. The trial court and the appellate court ruled otherwise. In *Shields*, the Court said:

The mortgage insurance was for the benefit of the Appellee [Jefferson Savings] and not for Appellants [Borrowers]. As stated in *Hunt v. Jefferson Savings and Loan Association*, 756 S.W.2d 762 (Tex. App.—Dallas 1988, writ denied): "No contract existed giving Hunt a right to an offset for private mortgage insurance, nor is there a requirement at law for an offset. Hunt's position is outside the contractual agreements between the parties and wholly unsupported by the law."

*Shields*, 799 S.W.2d at 444.

Furthermore, private mortgage insurance carriers are regulated in Texas by Tex.Ins.Code Ann. art. 21.50 (Vernon Supp. 1992) which only authorizes mortgage insurance companies to insure lenders, not borrowers. After a careful review of the record, we conclude that the Pinedas were neither insureds under the policy, nor in contractual privity with PMI. Nor were they beneficiaries under the PMI policy of insurance to Houston First Savings Association, the lender. The summary judgment evidence was uncontroverted that the private mortgage insurance was for the benefit of the lender and not for the Pinedas.

The Pinedas also argue that the affidavit of David Peterson, part of PMI's summary proof, is not competent summary judgment evidence, and assert that "[t]here is not [a] sworn *copy of the note*, as required in lieu of the original note," and that "appellee has only sworn that it has possession of the records pertaining to the note and not the note itself." This assertion mischaracterizes the evidence and is contradicted by the record. The Peterson affidavit reflects that PMI was the owner, holder and in possession of the note, which reads in part:

I am the custodian of records for PMI. Attached hereto are two pages of records from PMI. Said documents were kept by me in the regular course of PMI's business.... The attached record hereto as Exhibit 'A' is a true and correct duplicate of the original of the note (hereinafter the 'Note') sued upon in Cause No. 90–014984 in the 269th District Court of

Harris County, Texas and styled PMI Mortgage Insurance Co. v. Jesse P. Pineda and Zanaida Pineda.... PMI is the owner and holder and in possession of the Note.

The Peterson affidavit recites affirmatively that PMI is the owner, holder and in possession of the note in question. The affidavit constitutes a sworn copy of the note within the meaning of Tex.R.Civ.P. 166a(c) and is proper summary judgment evidence. *Life Ins. Co. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 380 (Tex.1978); *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 111 (Tex.App.—Dallas 1991, no writ).

The Pinedas place great reliance on *Jernigan v. Bank One, Texas, N.A.*, 803 S.W.2d 774 (Tex.App.—Houston [14th Dist.] 1991, no writ), and claim that it is "directly on point." *Bank One* is neither factually on point nor inconsistent with PMI's summary judgment. The Bank One note contained no endorsement to the plaintiff, unlike the Pinedas' note. Further, the affidavit of Bank One's Vice President, in contrast to the Peterson affidavit, swore only that the bank had possession of "the records pertaining to the note" and *not the note itself.*

■ The Pinedas also argue that the endorsement of their note, shown as an attachment to the Peterson affidavit, shows that PMI lacked capacity to sue on the note. They argue:

> There is no competent summary judgment evidence that Houston First American Savings Association ever negotiated or otherwise lawfully transferred the note or that PMI's transferor was ever the owner or holder of the note. There is no proof of any endorsement or assignment from Houston First American Savings Association in the summary judgment proof. There is no proof of the transaction by which United Savings acquired title to the note nor is there proof of the transfer of his note to United Savings F.S.B.

We do not agree. First, the Pineda note endorsement supports and is consistent with the uncontroverted statement in the Peterson affidavit that PMI is the owner, holder and in possession of the note. Second, unlike the note in *Bank One*, the endorsement negotiates the Pineda note *directly to PMI*, the party suing on the note (in *Bank One*, the note was never endorsed to Bank One but had been endorsed to a third party). Third, the endorsement itself satisfies requirements of form for negotiability under the Texas Business and Commerce Code and created an evidentiary presumption that PMI was the owner. Tex. Bus. & Com.Code Ann. §§ 3.201 & 3.202 (Vernon 1968); *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948 (1960). This presumption shifted the burden to the Pinedas to controvert ownership, which they failed to do, attempting instead to rely on distortions of the Peterson affidavit. Fourth, the affidavit of Brenda Henry attached as Exhibit "D" and Exhibit "G" to the Subrogation and Assignment Agreement between PMI and United States Savings Association of Texas, offered by the Pinedas further confirm that PMI was the owner, holder and in possession of the note. Ms. Henry's affidavit recites (i) her capacity to endorse and transfer the note, and (ii) acquisition of the assets of United Savings Association of Texas ("old United Savings") by the newly formed institution, United Savings Association of Texas ("new United Savings"). Although Ms. Henry's affidavit does not discuss Houston First American Savings, the subrogation and assignment agreement relied upon by the Pinedas recites that claim payments by PMI to the insured lender under its Certificate No. 5820594-0 were made. Further, Exhibit "A", an exhibit to the Jesse Pineda affidavit, reflects that PMI's policy of insurance was issued to Houston First American Savings with the identical policy number referred to in the subrogation and assignment agreement. Further, Exhibit "E" relied upon by the Pinedas shows a payment made by PMI to United Savings.

All of the foregoing evidence relied upon by the Pinedas themselves not only fails to controvert sworn evidence by Mr. Peterson that PMI was the owner, and holder in possession of the note, but rather, is entirely consistent with the Peterson affidavit.

The Pinedas further argue that the lender's transfer of their note to PMI automatically discharged their liability on the note. They claim this result is dictated by Section 3.601 of the Texas Business and Commerce Code. This argument is groundless.

Essential to the Pinedas' argument is the premise that PMI was "liable on the instrument." However, no summary judgment evidence showed that PMI was ever liable on the Pinedas' note to the lender. The uncontroverted evidence was to the contrary, namely, that PMI was not a maker of the Pineda note and was not a surety of the Pinedas' mortgage debt.

PMI's obligation to the insured lender was governed by the policy of insurance. PMI was obligated to the insured lender for "financial loss by reason of nonpayment of principal, interest and other sums due and payable in accordance with the terms and provisions of the loan documents...." Although the full text of the PMI First Lien Master Policy or Individual First Lien Policy is not contained in the summary judgment evidence, the affidavit of Peterson, in Response to the Pinedas' Interlocutory Motion for Summary Judgment states "the payment made to the lender by PMI was based upon a claim presented by the lender to PMI pursuant to its policy of insurance and was not made on behalf of the borrowers to extinguish the deficiency." PMI's summary judgment evidence to this effect was uncontroverted by the Pinedas. This was further confirmed by PMI's other summary judgment evidence in the form of the claim transmittal letter from PMI to United Savings, the successor of Houston First American Savings, with the itemized accounting of the basis for PMI's payment of the lender's claim. There was no summary judgment evidence that PMI assumed liability on the Pinedas' note, as argued by the Pinedas.

The Pinedas also argue that PMI's note holder claim was barred by limitations for a variety of reasons. First, they claim PMI's initially asserted claims for subrogation were time-barred by the PMI policy; second, they argue that the initial filing by PMI of its subrogation claims, being time-barred as of their filing date, were insufficient to toll the statute of limitations and allow PMI's note holder claims added by amendment to relate back under Tex.Civ. Prac. & Rem.Ann.Code § 16.068 (Vernon 1986); third, they claim that PMI was not entitled to the benefit of the federal statute of limitations applicable to claims or causes of action the federal institution assigned. None of these arguments have merit.

In support of their first limitations argument, the Pinedas claim the PMI policy issued to the lender contained a three-year contractual limitations period. Exhibit "A" attached to the Pinedas' response to plaintiff's second motion for summary judgment is purportedly an excerpt from the policy that shows a copy of the three year limitations period for a suit or action for "recovery of any Claim under this policy...." This Exhibit "A" was not properly authenticated summary judgment proof and was not properly before the trial court. However, even if it were proper summary judgment evidence, a review of other documents in the appellate record reveals that the Pinedas' three-year limitations argument takes the excerpted page out of context of other policy language and fails to refer back to the term "Claim" as a defined policy term. It is apparent, and the trial court was entitled to properly conclude, that the unauthenticated excerpt, quoted out of context by the Pinedas, dealt with a claim asserted by the lender for policy benefits and not claims which either the lender or PMI might assert against third parties.

The Pinedas next argue that PMI's note holder claim in its Second Amended Original Petition, filed on August 31, 1990, could not as a matter of law relate back to PMI's Original Petition to satisfy Tex.Civ. Prac. & Rem.Code § 16.068. The Pinedas contend that PMI cannot satisfy either of the tests under § 16.068. We disagree. In *Lathem v. Richey*, 772 S.W.2d 249, 255 (Tex.App.—Dallas 1989, writ denied), the court stated:

> The test, under both article 5539b and section 16.068, to determine whether an amended pleading relates back to the

original pleading for the purpose of tolling the statute of limitations, is two-pronged. First, the cause of action asserted in the original pleading must *not* have been barred by limitations when the original pleading was filed, and second, the amended pleading which changes the facts or grounds of liability or defense must not be wholly based on a new, distinct or different transaction or occurrence. *Leonard v. Texaco, Inc.,* 422 S.W.2d 160, 163 (Tex.1967); *Stone v. Brown,* 621 S.W.2d 182, 184 (Tex.Civ. App.—Texarkana 1981, writ ref'd n.r.e.); *Hastings v. Houston Shell and Concrete,* 596 S.W.2d 142, 144 (Tex.Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.).

█ Under § 16.068, it is permissible to allege new theories, facts or grounds of liability or defense in an amended pleading provided that such facts or theories are not wholly based on a new, distinct or different transaction or occurrence. *Richey,* 772 S.W.2d at 255.

The Pinedas claim that PMI's original petition failed to state a valid cause of action and that the suit as originally filed was groundless. Their argument appears to be that PMI was not entitled to seek subrogation against the Pinedas at the time the Original Petition was filed. In support of their theory, they attached an unauthenticated letter from Mr. Durden, the manager of the "Bond, Burglary and Plate Glass Casualty Division" of the State Board of Insurance. The letter constituted hearsay and fails to come within any exception to the hearsay rules of the Texas Rules of Civil Evidence and provides no evidentiary basis or other predicate for the opinions stated in it. There is no showing in the record that Mr. Durden, the author, claims to be an expert, that he was qualified as an expert, or that there is any basis recognized in law for his opinion. This letter, even if it had been competent summary judgment evidence, raised no fact issue on the validity of PMI's claim asserted in its Original Petition.

PMI's original petition did state a cause of action for subrogation and was timely filed prior to the expiration of any applicable statute of limitations.

The Pinedas next argue that the amended pleadings filed by PMI were based on a new, distinct or different transaction or occurrence. The Pinedas concede that the claims asserted in PMI's original petition and its second amended petition "relate to the same mortgage." A review of PMI's first amended original petition and second amended original petition discloses that the damages sought by PMI remained essentially the same; i.e., the amount remaining due and unpaid on the Pineda note after foreclosure and crediting of the foreclosure proceeds to the remaining principal note balance. Although the petitions reflect additional or independent causes of action, the gravamen of the recovery sought by each remained constant and was based on money owed the insured lender by the Pinedas, the default on the note by the Pinedas, and the payment by PMI of a claim to the insured lender. These transactions or occurrences remained the cornerstone of each petition. But for the Pineda debt and default, there would have been no claim made by the lender, therefore no payment by PMI to the lender; and PMI would not have sought recovery from the Pinedas. The Texas Commission of Appeals in *First State Bank & Trust Co. v. Ramirez,* 133 Tex. 178, 126 S.W.2d 16 (1939) stated:

> It is our opinion that where the same debt is sued on in the original petition and subsequent amendments, the mere fact that there is some change in the facts or grounds of liability does not make a distinct or different transaction or occurrence except as to new parties brought in after limitations had run....

*Id.* at 18.

Similarly, in *Theriot v. Smith,* 263 S.W.2d 181 (Tex.Civ.App.—Waco 1953, writ dism'd), the Court, in discussing art. 5539(b), the predecessor to § 16.068, stated:

> [u]nder this statute it has been repeatedly held that an amendment of pleading setting up additional grounds for liability, but upon the same debt and between the same parties, does not make a different transaction so as to prevent tolling of

limitations. An excellent discussion of this question is made by Justice Hale in *O'Quinn v. Scott,* (Tex.Civ.App. [1952]) [sic], 251 S.W.2d 168, writ of error ref'd. *Id.* at 184.

Significantly, each of PMI's petitions was based on the same Pineda obligation and default and involved the same parties. PMI's selection of additional or alternative grounds of recovery was not based on differing or wholly distinct transactions. Each petition filed by PMI sought the same amount of money in actual damages and each petition sought interest and attorney's fees.

■ The Pinedas also claim that PMI was not entitled to the benefits of the federal six-year limitations statute, although the Pinedas have not contended that the federal statute did not apply to the claims United Savings of Texas ("new United Savings") had against the Pinedas under the note. They contend that the federal six-year statute does not apply to assignees of a federal agency. Their argument misses the point. The summary judgment evidence was uncontroverted that PMI's claim payment was made to "United Savings" by check dated September 11, 1986. Although neither the claim worksheet nor the copy of the claim payment check specified "old" versus "new" United Savings, the Brenda Henry affidavit reflects that on December 30, 1988, substantially all assets of United Savings Association of Texas were transferred to a newly formed institution, United Savings Association of Texas, F.S.B. Therefore, the record reflects that the claim payment to "United Savings" by PMI was made prior to the transfer of all assets to the newly formed United Savings Association of Texas, F.S.B.

The Fifth Circuit Court of Appeals in *United States v. Sellers,* 487 F.2d 1268 (5th Cir.1973) has held that the state statute of limitations applicable to a claim acquired by the government *ceases to run* against the government at the time the government acquires the claim and that the six-year statute of limitation *commences to run against the government* on the date it acquires a note.

Upon negotiation and transfer to PMI of the Pineda note by new United Savings, PMI acquired the rights of new United Savings in the Pineda note. According to Tex.Bus. & Com.Code Ann. § 3.201, (Vernon 1968) "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." Further, § 3.201 applies to *all transferees* regardless of whether the transferees are holders. *NCNB Texas Nat'l Bank v. Campise,* 788 S.W.2d 115 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

Although the Pinedas argue that PMI was on notice from them of their claimed defenses at the time new United Savings negotiated and transferred the Pineda note to PMI, and that therefore PMI is not a holder in due course, new United Savings' limitation rights under the federal statute, nonetheless, passed to PMI by virtue of § 3.201 regardless of whether PMI took as a holder in due course. *Campise,* 788 S.W.2d at 118–19.

■ Further, the Texas four-year statute of limitations for suit to collect the Pineda note *ceased to run* as of the date that new United Savings acquired the note on December 30, 1988. Even without protection of the federal statute and rights transferred by § 3.201, and even assuming for purposes of argument that the limitation rights of new United Savings were not transferred and the state statute began to run again against PMI when PMI acquired the Pineda note, nonetheless, the four-year statute had still not expired when PMI originally filed suit. Therefore, PMI's suit was not time barred by the four-year statute of limitations.

The Pinedas argue that Peterson admits in his affidavit that the lender at the request of PMI "bid low at the trustee sale in order to manufacture a deficiency." We do not agree. The relevant text of the affidavit reads:

The payment made to the lender by PMI was based upon a claim presented by the lender to PMI pursuant to its policy of insurance and was not made on

behalf of the borrowers to extinguish the deficiency.

When the value of the property securing a Note is less than the amount due on the Note, PMI requests that all of its insured lenders bid a deficiency to protect PMI's rights against the borrower.

The Peterson affidavit, which is the only summary judgment evidence to this effect raised by the Pinedas, does not raise a fact issue that the mortgagee deliberately "bid low at the trustee sale in order to manufacture a deficiency." The Pinedas fail to offer any summary judgment evidence of their own to raise a fact issue in this regard. No summary judgment evidence sustains the Pinedas' argument.

The Pinedas claim in their third point of error that the trial court erred in awarding PMI "prejudgment interest at the note rate instead of at the constitutional and statutory rate for liquidated damages from breach of contract." The Pinedas also claim in their fourth point that the trial court erred in awarding postjudgment interest in excess of 10% per annum instead of at the legal rate "provided by Tex.Rev.Civ.Stat. Ann. art. 5069–1.05, § 2 (Vernon Supp. 1991)."

The Pinedas further claim in their fifth point of error that the award of prejudgment interest at the note rate, amounting to $8,839.01, constituted usury, and therefore, the summary judgment in favor of PMI should be reversed and rendered that it take nothing.

■ All of the Pinedas' usury arguments are premised on Texas usury statutes. They do not address the preemptive effect of the Depository Institutions Deregulation Monetary Control Act of 1980, (DIDMCA), PUB.L. NO. 96–221, 94 STAT. 132 (1980), as amended by the Housing and Community Development Act of 1980, PUB.L. NO. 96–399, 94 STAT. 1614 (1980). DIDMCA was effective April 1, 1980, and preempted state usury laws regarding mortgage loans secured by first liens on real estate unless a state has adopted a law which explicitly stated that the state did not want the DIDMCA to apply. The Texas Supreme Court has recognized that the

State of Texas did not opt out from DIDMCA preemption prior to the statutory deadline of April 1, 1983. Therefore, DIDMCA applies and preempts Texas usury Laws regarding mortgage loans secured by first liens on residential real estate. The Texas Supreme Court in *Seiter v. Veytia*, 756 S.W.2d 303 (Tex.1988), has explicitly held that:

> for loans made after April 1, 1980 secured by first lien on residential real property, state usury laws do not apply, and federal law prevails.

*Id.* at 305. Therefore, all of the Pinedas' usury arguments are groundless, and without merit.

In the alternative, even if there were no federal preemption, PMI has not charged or been awarded usurious interest.

■ The Pinedas argue that PMI's pleadings "charged" interest for a thirty (30) day interest-free period governed by Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987).

Article 5069–1.03, though inapplicable to the facts of this case, provides:

> [w]hen no specified rate of interest is agreed upon by the parties, interest at the rate of six percent (6%) per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable. (emphasis added).

Texas case law recognizes that contracting parties are free to agree to post-maturity interest at the highest legal rate and that a contract or note which provides interest at a specified rate makes art. 5069–1.03 inapplicable. *Dodson v. Citizens State Bank*, 701 S.W.2d 89 (Tex.App.—Amarillo 1986, writ ref'd n.r.e.) is dispositive of this issue. In that case, appellants advanced an argument that "[a]ll past due principal and interest shall bear interest at the *highest legal rate*." (emphasis added).

In the instant case, summary judgment evidence was uncontroverted that the Pinedas *contracted* to pay interest on the unpaid principal balance from the date of the note *until paid* at the rate of 11.875 per-

cent, subject to adjustments in accordance with the variable rate mortgage rider attached to the note. The Addendum to the Promissory Note and Deed of Trust similar to the note in *Citizens State Bank*, provided that after acceleration, "the entire unpaid principal balance of Said Promissory Note and all accrued interest thereon ... shall bear interest from the date of such event of default until paid at the maximum lawful rate of interest now allowed by law." Further, the variable rate mortgage rider attached to the promissory note provided that "no adjustment of the rate of interest shall be made after such acceleration with out the written consent of the then owners of the property described in said Deed of Trust." Thus, the authenticated summary judgment documents show conclusively that the Pinedas contracted to pay pre-maturity interest at the specified 11.875% rate, subject to subsequent adjustments, and that the post-maturity interest rate would remain the same as that at the time of default, absent an express agreement to the contrary by the Pinedas. Therefore, the trial court's award of pre-judgment interest at the note rate from date of the foreclosure sale was specifically agreed to by the parties, was not governed by art. 5069–1.03 and is not usurious as a matter of law. Even if PMI's pleadings somehow constituted a "charging" of interest, the interest "charged" was not usurious.

■ The Pinedas further claim that PMI did not offer any summary judgment evidence of any agreement which might arguably avoid the 6% cap of art. 5069–1.03 and Tex.Const. art. XVI, § 11. This is inaccurate. First, the Pinedas' note, the variable interest rate rider and the deed of trust securing the note, all of which were uncontroverted and part of PMI's summary judgment proof, established the Pinedas' agreement to pay interest as recited above. DIDMCA preempted state usury laws regarding the Pinedas' loan. Second, the Pinedas' reliance on Tex.Const. art. XVI, § 11 ignores the language of the constitution itself. Section 11 makes application of that provision specifically contingent on "the absence of legislation fixing maximum

rates of interest. . . ." DIDMCA preempts this constitutional provision. However, even absent DIDMCA, art. 5069–1.01 *et. seq.* legislates maximum rates of interest at rates that exceed the 10% cap specified in Tex. Const. art. XVI, § 11. Further, § 11, similar to art. 5069–1.03, exempts contracts when the rate of interest is agreed upon by the parties. This is consistent with the application and effect of art. 5069–1.03 as discussed above. Therefore, not only was there summary judgment evidence of an agreement to support the interest awarded by the trial court, such interest was proper, consistent with statutory guidelines, and not in violation of the state constitution.

■ The Pinedas further argue that their note contained no specific interest rate, therefore art. 5069–1.05 limited post-judgment interest to 10%. Again, DIDMCA preempts Article 5069–1.05. However, even if there was no preemption, their argument has no basis in law or in the summary judgment evidence. As the note, variable note rider and deed of trust indicate, the Pinedas agreed to an interest rate of 11.875%, subject to periodic adjustment as detailed in the variable rate mortgage rider.

When all of the essential terms have thus been stated and determination of the interest rate is merely a matter of calculation under applicable rules of law, the Texas Supreme Court has held that this constitutes an agreement for a "specified rate of interest" under old art. 5070. *Community Sav. & Loan Ass'n v. Fisher*, 409 S.W.2d 546 (Tex.1966).

*Consolidated Capital Special Trust v. Summers*, 737 S.W.2d 327 (Tex.App.—Houston [14th Dist.] 1987), *reversed*, 783 S.W.2d 580 (Tex.1989), relied upon by the Pinedas, does not stand for the blanket proposition that post-judgment interest on liquidated claims arising out of foreclosure sales is necessarily at the rate of 10% per annum.

■ The Pinedas assert in their twelfth point of error that the trial court erred in adding a 30% "contingent fee to the

amount of the judgment as attorney's fees." We disagree.

The Pinedas first argue that Tex.Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1986) did not authorize the award of attorney's fees to PMI because such fees were allegedly not "reasonable" and that summary judgment proof included no detail of the time records of PMI's attorneys.

The affidavit of Calvin A. Barker, Jr., in support of PMI's Motion for Summary Judgment recited a legal and factual basis for the trial court's award of attorney's fees in this case. The trial court awarded $6,932.72 as attorney's fees at the trial-court level and additional fees, heretofore noted, in the event of appeals. The Pinedas failed to controvert that portion of Mr. Baker's affidavit regarding attorney's fees for the various appellate levels of the case. Therefore, they have preserved no error about these fees and there is nothing for this Court to consider.

As for the attorney's fees awarded for trial, the record contains the affidavit of the Pinedas' counsel in which he opines "as for the attorney's fees claimed by the plaintiff in my opinion they are totally unreasonable." However, the Pinedas' counsel earlier in the same affidavit states that, as of the time of his affidavit, he had necessarily spent 61.25 hours representing the Pinedas at an agreed hourly rate of $100.00 per hour. Thus, the trial court at the time of granting PMI's summary judgment had before it, or had previously considered, evidence offered by the Pinedas themselves that an attorney's fee of $6,125.00 as of the time the Pinedas' counsel filed the affidavit described above, was a reasonable and necessary fee. This evidence is not inconsistent with and supports the court's rendition of judgment for PMI's attorney's fees in the amount of $6,932.72 through the time of the hearing on PMI's motion for summary judgment. This hearing was held several months *after* the filing of the Pinedas' counsel's affidavit and preparation and filing by PMI's counsel of additional pleadings and other papers to respond to and defeat their counterclaims as well as to recover on the note. Thus, the affidavit of

the Pinedas' counsel supports the trial court's award of PMI's attorney's fees through the summary judgment hearing; it is consistent with the affidavit testimony of Mr. Barker and failed to raise a fact issue of the reasonableness of the fees.

The Pinedas also argue that the loan documents limited their exposure for attorney's fees to 10%. This argument, however, ignores the fact that the loan documents do not limit recovery for attorney's fees required for PMI to defend the counterclaims which were also before the trial court.

The Pinedas next argue that the trial court's award of attorney's fees in this case is "an endorsement of champerty." This argument has no merit for the reasons hereafter discussed.

### THE PINEDA'S COUNTERCLAIM

The Pinedas contend in their sixth, seventh, eighth, ninth, tenth, and eleventh points of error that the trial court erred "in granting summary judgment" against them on their counterclaim for 1) bad faith, 2) for violation of Tex.Ins.Code Ann. art. 21.21, 3) for violation of the Texas Deceptive Trade Practices Act ("DTPA"), 4) for violation of Section 27.01 of the Texas Business and Commerce Code, 5) for violation of the Texas Debt Collection Act, and 6) in granting judgment to a champertor. We disagree.

The Pinedas' claims that the actions of PMI were in bad faith, in violation of Tex.Ins.Code art. 21.21, and in violation of the DTPA are all premised on the spurious argument that they were "insureds" under the PMI policy, in privity with PMI, or were otherwise beneficiaries under the policy. The summary judgment evidence the Pinedas rely on, and PMI's summary judgment evidence, established conclusively that the Pinedas were not insureds under the PMI policy. The copy of the face sheet entitled "Policy of Insurance", attached to the affidavit of Jesse Pineda, plainly and unequivocally states that:

in consideration of the payment of premiums set forth below, the company hereby insures the *lender* against loss of the

mortgage loan hereinafter described, subject to the terms and conditions contained on the reverse side hereof. (emphasis added).

Further, the affidavit of David Peterson, offered as summary judgment evidence by PMI, unequivocally stated that PMI insured the lender and not the borrowers, the Pinedas.

The Pinedas next argue that the affidavit of Jesse Pineda proved or at least raised a fact issue on whether the Pinedas were in privity with PMI. Available Texas law regarding this issue holds that the borrower is neither an insured nor a third-party beneficiary under the mortgage insurance policy to the lender. *See Jefferson Savings,* 756 S.W.2d at 765, and *Shields,* 799 S.W.2d at 444. The Pineda affidavit at most indicates that the Pinedas remitted premiums for the private mortgage insurance to the lender, as provided in the deed of trust on the mortgaged real property; this was consistent with and corroborated in the Peterson affidavit. The Pinedas were not insureds, nor was the mortgage insurance (provided by PMI) provided for their benefit.

In *Chaffin v. Transamerica Ins. Co.,* 731 S.W.2d 728 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), the Court specifically disallowed a third-party's cause of action under the insurance code because the purported plaintiff did not come within the definition of a "person" and similarly did not come within the coverage of the DTPA. Like the Pinedas, the unsuccessful plaintiffs in *Chaffin* argued that the insurance carrier had liability under both Article 21.21 of the Insurance Code and related provisions of the DTPA, as well as owing a general duty of good faith and fair dealing to them. The Court denied the plaintiffs' claims and found "no authority for extending the construction of a 'person' beyond one who is either an insured or a beneficiary of the policy." *Id.* at 731.

Texas law does not generally recognize a duty of good faith and fair dealing in every contractual relationship. Appellants' broad application of *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.

1987) is inappropriate. In *Arnold,* the Texas Supreme Court specifically declined to impose an implied covenant of good faith and fair dealing in every contract and only recognized a duty of good faith and fair dealing as a result of a special relationship between the parties governed by or created by a contract. The summary judgment evidence clearly demonstrated that the Pinedas were not "insureds" or otherwise beneficiaries under the PMI policy. Further, the Texas Supreme Court in *F.D.I.C. v. Coleman,* 795 S.W.2d 706 (Tex.1990) has declined to impose a duty of good faith and fair dealing in a debtor and creditor relationship, absent a special relationship. *See also English v. Fischer,* 660 S.W.2d 521 (Tex.1983). The trial court correctly granted summary judgment for PMI on the Pinedas' counterclaims for bad faith, violation of Tex.Ins.Code Ann. art. 21.21 and violations of the DTPA.

Section 27.01 of the Texas Business and Commerce Code deals with fraud in real estate and stock transactions. Elements of proof essential to recovery under the section involve a false representation made to induce a person to enter into a contract and relied on by that person in entering into that contract; or a material, false promise to do an act when the promise is made with the intention of not fulfilling it, made to induce a person to enter into a contract and relied on by that person. *See* Tex.Bus. & Com.Code Ann. §§ 27.-01(a)(1)(A & B) and (a)(2) (Vernon 1987). The summary judgment proof contains no evidence that PMI made any false representation to induce the Pinedas to enter into a contract and on which the Pinedas relied in entering into such a contract. Nor does the summary judgment evidence reflect that PMI made any false representation to induce the Pinedas to enter into a contract and on which the Pinedas relied in entering into such a contract. Nor does the summary judgment evidence reflect that PMI made any false promise to the Pinedas to do an act, which promise was made with the intention of not being fulfilled or made to the Pinedas to induce them to enter into a contract and which

was relied upon by the Pinedas in entering into that contract.

There was no violation of Tex.Bus. & Com.Code § 27.01 as a matter of law. *Greenway Bank & Trust v. Smith*, 679 S.W.2d 592 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Donnelly v. Young*, 471 S.W.2d 888 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.); *American Title Ins. Co. v. Byrd*, 384 S.W.2d 683 (Tex. 1964).

■ PMI's original motion for summary judgment, filed on July 9, 1990, sought judgment as to its entire claim in this lawsuit. At the time the Pinedas filed their initial response to PMI's motion for summary judgment on July 23, 1990, the Pinedas first amended original counterclaim was on file, having been filed on July 19, 1990. However, the Pinedas response to PMI's motion for summary judgment did not expressly call the trial court's attention to their specific claim under the Texas Debt Collection Act, did not discuss same and adduced no summary judgment evidence in support of such cause of action.

In its subsequent motion for summary judgment, filed on November 2, 1990, PMI again sought summary judgment on its entire claim against the Pinedas, as well as summary judgment against the Pinedas on their respective counterclaims. Thus, PMI sought summary judgment that, as a matter of law, the Pinedas did not have a cause of action against PMI under the Texas Debt Collection Act. The summary judgment proof adduced by PMI and even a portion of that adduced by the Pinedas themselves demonstrates that the Pinedas were not a party to any "consumer transaction" with PMI. As discussed more fully elsewhere in this opinion, the Pinedas were neither insureds nor beneficiaries of the PMI insurance policy issued to the lender.

Tex.Rev.Civ.Stat.Ann. art. 5069–11.01 (Vernon 1987) defines those transactions and parties subject to the Texas Debt Collection Act. PMI is not within the definition of a "debt collector" in art. 5069–11.01(c); nor were the activities of PMI within the definition of Section (b) which defines "debt collection" and ties the activi-

ties or debts as being due to a "creditor". Section (f) of that article defines a "creditor" as a "party to a consumer transaction other than a consumer." If any "consumer transaction" existed in this case, it was between the lender and the Pinedas. The Subrogation and Assignment Agreement between the lender and PMI and the endorsement and negotiation of the Pineda note to PMI all occurred *after* any "consumer transaction" that the Pinedas may have had with the lender. This is confirmed not only by dates of the respective instruments in the record, but also by the language contained in the subrogation and assignment agreement. The insured lender represented and warranted to PMI that neither it, nor its loan servicers, agents or representatives has performed or failed to perform any act which has or will result in the cancellation, satisfaction or compromise of any right, remedy or cause of action arising out of the loan documents. Further, the subrogation agreement required that the insured lender promptly notify PMI in writing of the existence and nature of any causes of action arising from the loan documents in which the insured lender had or acquired knowledge. It is thus apparent that PMI was not involved in any "consumer transaction" between the Pinedas and the lender.

Moreover, the Pinedas wholly failed to furnish summary judgment proof that PMI violated any specific provision of the Texas Debt Collection Act. Thus, the Pinedas failed to present to the trial court, in their own motion for summary judgment and in their response to PMI's motion, the specific issues and proof applicable to their counterclaim under the Act. Therefore, they have not preserved their point on violation of the Texas Debt Collection Act for review by this Court.

■ The gist of the Pinedas' claim of champerty seems to be that there was no consideration given the insured lender by PMI for the subrogation and assignment agreement. The authorities the Pinedas cite for their champerty proposition recognize assignments for bonafide, substantial

consideration as being an exception to the so-called prohibition against champerty.

Texas courts recognize that causes of action are property rights which can be fully assigned. *Kirby Forest Indus. v. Dobbs,* 743 S.W.2d 348 (Tex.App.—Beaumont 1987, writ denied). Further, Texas Business and Commerce Code Section 3.201 provides that a negotiable instrument when transferred also transfers legal rights of the transferor as against the maker of that instrument. *Campise,* 788 S.W.2d at 118. The uncontroverted proof reflected issuance of PMI's policy to the insured lender, the lender's claim for loss to PMI under its policy, and PMI's payment of the lender's claim. The subrogation and assignment agreement expressly recites "in consideration for claim payments made by insurer to insured under the policy, the receipt and sufficiency of which the insured hereby acknowledges...." This evidence was uncontroverted by the Pinedas. Further, the affidavit of David Peterson authenticated a true and correct copy of the endorsement by the lender to PMI thereby reflecting transfer of all of the lender's rights in and to the lender's rights in and to the instrument so endorsed.

It is undisputed that the Pinedas defaulted on their mortgage and failed or refused to bring their note current. PMI paid and gave valuable consideration for the subrogation and assignment agreement and the transfer of the note and supporting loan documents from the lender. The Pinedas' citation of Tex.Ins.Code Ann. art. 21.48A is neither relevant to nor supports their champerty claim.

### DISPOSITION OF THE APPEAL

We have carefully reviewed and considered all points of error which have been brought forward by the Pinedas. They are overruled. The judgment of the trial court is affirmed.