**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 95-20034

---

NANCY ABSHIRE PALMA,

Plaintiff-Appellant,

VERSUS

VEREX ASSURANCE, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

April 16, 1996

Before DAVIS, PARKER, and BUNTON[*], Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

## I.  FACTS

On November 28, 1983, plaintiff-appellant Nancy Palma ("Palma") borrowed $121,300 from City Federal Savings & Loan ("City Federal") to purchase a condominium.  As a condition of the loan, Palma was required to purchase mortgage insurance to protect City

---

[*] District Judge of the Western District of Texas, sitting by designation.

1

Federal from a loss in the event she defaulted on the loan. The mortgage insurance was purchased by City Federal from defendant-appellee Verex Assurance, Inc. ("Verex"). The premiums were paid with Palma's money, which had been placed in an escrow account.

Palma lived in the condominium until November of 1986, when she moved out of the property and used it as rental property. In 1988, Palma defaulted on her obligation to repay the note. After the default City Federal foreclosed on the condominium. On May 3, 1988, the property was sold at public auction for $30,800 to City Federal, the mortgage holder. After the foreclosure there remained a principal balance of $115,825.14 due and owing to City Federal under the terms of the note. On June 23, 1989, Verex paid City Federal $51,122.47 pursuant to the mortgage insurance policy and received an assignment of the entire deficiency due on Palma's note.

On April 1, 1991, Verex, as subsequent assignee of City Federal, demanded that Palma repay $117,521.98 as the "deficiency balance due." This amount included accrued interest and costs of foreclosure, as well as a credit for the proceeds received from the foreclosure of the condominium. The amount demanded did not include a credit for the proceeds Verex paid to City Federal under the mortgage guarantee insurance policy.

We have had difficulty in sorting out the record concerning the economic facts of the claims in this litigation and have been unable to resolve some apparent inconsistencies. However, we believe we can at least get in the ballpark with a summary that

2

approaches accuracy.

Palma paid $121,300 for the house. She made mortgage payments and payments for the mortgage insurance for approximately four years. However, after four years of mortgage payments and a $30,800 credit to her balance from the foreclosure proceeds, she still owed $115,825.14. The difference apparently was attributable to charges assessed against Palma by City Federal's attorneys. To state it another way, Palma was assessed foreclosure costs that in effect wiped out the $30,800 credit from the foreclosure proceeds. However, the story is far from over. By the time the court granted Verex's motion for summary judgment and ruled against Palma on her wrongful foreclosure claim she was assessed additional attorneys' fees for Verex's lawyers in the astonishing amount of $225,750. This additional amount raised the judgment against Palma to a total of $419,898.12.

## II. PROCEEDINGS BELOW

Palma filed suit in state district court alleging that Verex's pursuit of the deficiency was in violation of the terms of the mortgage insurance policy. Based upon diversity jurisdiction Verex removed the suit to the Southern District of Texas and filed a counterclaim for the deficiency and attorneys' fees.

Palma then sought to have her claims against Verex certified as a class action. The case was referred to a magistrate judge for pretrial management. The magistrate initially recommended that some of Palma's claims be certified in a class action but set aside that recommendation after reconsidering Palma's standing. The

magistrate found Palma was not a third-party beneficiary of the insurance contract and recommended that class certification be denied as to any and all claims based upon an assertion of third-party beneficiary status. The magistrate then recommended that Verex's motion for summary judgment be granted and recommended the dismissal of all of Palma's claims except those alleging debt collection violations, violations of the Deceptive Trade Practices Act ("DTPA"), and wrongful foreclosure. The district court adopted the magistrate's recommendations thereby denying class certification of the dismissed claims and granting Verex's motion for summary judgment of all claims, except wrongful foreclosure.

The case proceeded to trial on Palma's wrongful foreclosure claim. After a one day bench trial the district court issued its findings of facts and conclusions of law and entered final judgment in favor of Verex. The judgment awarded Verex $419,898.12. Palma appealed.

### III. ANALYSIS

A. STANDING & ART. 21.21

The district court granted Verex's motion for summary judgment as to Palma's claims based upon alleged violations of the Texas Insurance Code after concluding that Palma did not have standing to assert those claims under art. 21.21(16) of the Texas Insurance Code.[2] We review the district court's grant of summary judgment de

---

The actual analysis of all issues disposed of by summary judgment was conducted by the magistrate. However, we will refer to the analysis as though it were conducted by the trial court because it adopted the magistrate's recommendations.

novo. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992).

The district court's jurisdiction in this case was based on diversity of citizenship and it correctly held that it was bound to apply the substantive law of the State of Texas. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938). We begin our review of the district court's decision by examining the applicable law.

Art. 21.21(16) of the Texas Insurance Code provides:

> *Any person* who has sustained actual damages as a result of another's engaging in an act or practice declared in § 4 of this Article . . . [to be] unfair or deceptive acts . . . in the business of insurance or in any practice defined by § 17.46 of the Business and Commerce Code . . . as an unlawful trade practice may maintain an action against the person . . . engaging in such acts. (emphasis added).

Although "any person" would appear to be sufficiently broad to permit Palma to have standing, it appears to have been narrowly construed. This court, interpreting the laws of Texas, has held that "absent privity of contract or some sort of reliance by the person bringing the claim on the words or deeds of the insurer, a suit will not lie under art. 21.21." *Warfield v. Fidelity and Deposit Co.*, 904 F.2d 322, 327 (5th Cir. 1990). In reaching this holding the court analyzed two decisions from the Texas courts of appeal that had addressed standing under art. 21.21. The first case was *Chaffin v. Transamerica Ins. Co.*, 731 S.W.2d 728, 731 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). The court, discussing *Chaffin*, stated that the Texas court "held that the term 'person' in art. 21.21 means either an insured or a

5

beneficiary of the policy." *Warfield*, 904 F.2d at 326. The second case was *Hermann Hosp. v. National Standard Ins. Co.*, 776 S.W.2d 249, 252 (Tex. App.--Houston [1st Dist.] 1989, writ denied). The court noted that *Hermann* broadened standing under art. 21.21 to include persons who had relied on representations of the insured. *Warfield*, 904 F.2d at 327. Despite expressly recognizing that *Chaffin* extended standing to beneficiaries of insurance policies, *Warfield* limited standing to those with privity of contract or those who had relied on the words or deeds of the insurer. This analysis was later recognized as "the new test" for determining standing under art. 21.21. *In Re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993).

The Texas Supreme Court recently addressed standing under art. 21.21 in the context of a claim asserted under an automobile liability policy by a third-party claimant in a direct action against an insurer arising out of an accident with the insured. In that type of action, the court held that third-party claimants are not entitled to standing under art. 21.21. *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 150 (Tex. 1994). The court found that the following factors weighed against granting standing to the third-party claimant:

> A third-party claimant has no contract with the insurer or the insured, has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers under art. 21.21 with regard to their insureds.

*Id.* at 149. The court then noted that although it had previously

6

extended standing to third-party beneficiaries of automobile insurance policies, it refused to extend standing to third-party claimants of those policies under art. 21.21. *Id.* at 150 (citing *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770 (Tex. 1983)).[3]

Due to the unique nature of the mortgage insurance policy in the instant case, Palma, unlike the third-party claimant in *Watson*, satisfies most of the the factors discussed by the Texas Supreme Court that weighed against standing in that case. Palma had a contract with the insured, City Federal, in the form of a mortgage. Palma paid the premiums for the mortgage insurance. Additionally, Palma is designated by name in the certificate of insurance issued by Verex to City Federal. The considerations that weighed against standing in *Watson* weigh in favor of granting Palma standing in the instant case. However, because the court did not expressly state that these factors were to be used when deciding whether a party was entitled to standing under art. 21.21 we must determine what the Texas Supreme Court would do if it were presented with the issue before us.

"When presented with an unsettled point of state law, our role under *Erie* is to determine how the [Texas] Supreme Court would resolve the issue if presented with it." *Coatings Mfrs., Inc. v.*

---

In *Dairyland* the court held that for purposes of recovering attorney's fees under an automobile insurance policy, a third party who has obtained a judgment against an insured is an intended third-party beneficiary of the automobile insurance policy and is entitled to standing in order to enforce the policy provisions. *Dairyland County Mut. Ins. Co.*, 650 S.W.2d at 775-76.

7

*DPI, Inc.*, 926 F.2d 474, 479 (5th Cir. 1991). The factors discussed by the Texas Supreme Court in *Watson* that weighed against extending standing to the third-party claimant in that case are present in the instant case. This, combined with the unique nature of mortgage insurance, we believe impacts on our analysis of standing under art. 21.21. Consequently, we conclude that if the Texas Supreme Court were presented with the question before us it would hold that standing under art. 21.21 is satisfied by not only those who can establish privity of contract or reliance on a representation of the insurer, but also by those who can establish that they were an intended third-party beneficiary of the insurance contract.[4] Therefore, we must determine whether Palma was an intended third-party beneficiary of the contract between Verex and City Federal in order to determine if the district court was correct when it found that Palma lacked standing to sue under art. 21.21.

   1.  THIRD-PARTY BENEFICIARY STATUS

---

*But see*, *Pineda v. P.M.I. Mtg. Ins. Co.*, 843 S.W.2d 660, 665 (Tex. App.--Corpus Christi 1992) writ denied *per curiam*, 851 S.W.2d 191 (Tex. 1993). In *Pineda,* the Corpus Christi court stated, "[T]he [borrowers] were neither insureds under the [mortgage insurance] policy, nor in contractual privity with the [insurer]. Nor were they beneficiaries under the policy of insurance to . . . the lender." *Id.* Although the Texas Supreme Court denied writ, it stated that it was neither appoving or disapproving of the appellate court's decision. *Pineda v. P.M.I. Mtg. Ins. Co.*, 851 S.W.2d 191 (Tex. 1993). While we are not bound by the holdings of state appellate courts, we are not to disregard them unless we are convinced by other persuasive data that the Texas Supreme Court would rule otherwise. *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S. Ct. 179, 183, 85 L. Ed. 139 (1940). *Watson's* discussion of factors that weighed against standing under art. 21.21 in that case presents us with such data.

Under Texas law, in order for Palma to qualify as a third-party beneficiary of the insurance contract she must prove three things: (1) that she was not privy to the written agreements between Verex and City Federal; (2) that the contract was made at least in part for her benefit; and (3) that the contracting parties intended for Palma to benefit by their written agreements. *Talman Home Fed. Sav. & Loan Ass'n of Illinois v. American Bankers Ins.*, 924 F.2d 1347, 1350 (5th Cir. 1991)(internal citations omitted).

It is undisputed that Palma was not privy to the contract entered into between Verex and City Federal, thereby satisfying the first element of the analysis. Whether the contract was made for her benefit is derived solely from the language of the contract. *Id.*

Condition 15 of the contract for mortgage insurance states:

15. NO RIGHT OF SUBROGATION AGAINST THE BORROWER. The Borrower shall not be liable to the Company for any loss paid to the Insured pursuant to this policy; provided, however, that the real estate shall consist of a single-family dwelling occupied by the Borrower; otherwise, the Company reserves the right to make a claim against the Borrower for any loss paid or deficiency suffered by the Company.

This language benefits the borrower only, in this case Palma. However, the very next condition in the contract states:

16. TO WHOM PROVISIONS APPLICABLE. The provisions of this policy shall inure to the benefit of and be binding upon the Company and the Insured and their successors and assigns.

Under Texas law, contracts for insurance are generally enforced as written; however, ambiguous insurance contracts are interpreted against the insurer. *National Union Fire Ins. Co. v.*

9

*Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). The interpretation of an insurance contract, including whether it is ambiguous, is a legal determination subject to de novo review. *Truehart v. Blandon*, 884 F.2d 223, 226 (5th Cir. 1989). Therefore, we must examine Condition 15 and Condition 16 in order to determine if an ambiguity exists.

Condition 15 is written for the sole benefit of the borrower. The policy specifies additional beneficiaries in Condition 16 which states that the policy provisions are written for the benefit of Verex and City Federal. Neither condition is mutually exclusive. However, if these two provisions create an ambiguity it is to be construed against Verex. *National Union Fire Ins. Co.*, 811 S.W.2d at 555. In any event, we find no ambiguity created by Conditions 15 and 16. We also find that the insurance contract was actually made, in part, for the benefit of Palma.

Finally, we must determine if Verex and City Federal intended the contract to benefit Palma. The intent of the contracting parties is discerned from the four corners of the instrument. *See Talman*, 924 F.2d at 1350 ("It is the intention and purpose of the contracting parties, as disclosed within the four corners of the instrument, which should control")(internal citation omitted).

One Texas court has stated that "[w]here a stranger contends that it was intended that the provisions of a contract should inure to his benefit such intention must be clearly apparent. If there is any doubt concerning the intent in this regard as it appears from the contract itself, such doubt should be construed against

10

such intent." *Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co.*, 427 S.W.2d 76, 80 (Tex. Civ. App.--Dallas 1968, writ ref'd n.r.e.); *see Talman*, 924 F.2d at 1351 (quoting *Republic Nat'l Bank*). Palma is not a stranger to the insurance contract between Verex and City Federal; she is specifically identified as the borrower in the contract itself. Consequently, the *Talman* decision does not affect our analysis.

The contract for insurance was clearly intended, in part, to benefit Palma.[5] Consequently, the three elements having been satisfied, we find that Palma is an intended third-party beneficiary of the contract for mortgage insurance entered into between Verex and City Federal.

Having determined that Palma is an intended third-party beneficiary, it would appear that a reversal of the trial court's grant of summary judgment on this issue is all that remains for us to do. However, in finding of fact seven the trial court alternatively found that even if Palma were a third-party beneficiary she could not enforce the contract for insurance. This alternative finding was based upon the district court's interpretation of language contained within Condititon 15 of the contract for insurance relating to whether the contract's validity was dependent upon Palma occupying the property.

2. OWNER OCCUPANCY

We review conclusions of law de novo and findings of fact for

---

[5] *See* "CONTRACTUAL RIGHTS AND ASSIGNMENT", *infra*, for a discussion of the benefits conferred on Palma.

clear error. *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995). The district court classified its alternative determination of the applicability of Condition 15, which focused upon occupancy, as a finding of fact. However, because this finding was based upon an interpretation of the policy it is reviewed as a conclusion of law. *Harbor Ins. Co. v. Urban Constr. Co.*, 990 F.2d 195, 199 (5th Cir. 1993). Consequently, we conduct a de novo review.

Condition 15 states that the borrower is not liable to Verex "for any loss paid to the Insured pursuant to this policy; provided, however, that the real estate shall consist of a single-family dwelling *occupied by the Borrower*." (emphasis added). Consequently, we must determine whether Palma was required to occupy the property at the time of default in order to be entitled to the protection afforded to borrowers by Condition 15.

Condition 15 provides us with no guidance as to when occupancy is to be determined. If occupancy is determined at the time the contract was entered into, then Palma is clearly within the language of Condition 15. However, if occupancy is determined at the time of default, then the district court correctly found that Palma was afforded no protection. The ambiguity is apparent and it must be interpreted against Verex. *National Union Fire Ins. Co.*, 811 S.W.2d at 555. Therefore, we hold that occupancy is determined at the time the contract of insurance was entered into and the policy was issued. As a result of this determination, we find that the district court erred in its alternative finding, and we hold

12

that Palma satisfied the language of the policy by occupying the dwelling at the time the contract of insurance was entered into and the policy was issued. The impact of the court's error, concerning Palma's ability to enforce the terms of the contract, is discussed below.

B. ASSIGNMENT OF THE DEFICIENCY BALANCE

Palma contends that the assignment of the deficiency balance to Verex violated her contractual rights, specific statutes, and/or the public policy of the State of Texas. We will address each of these arguments.

1. CONTRACTUAL RIGHTS AND ASSIGNMENT

Palma, by virtue of her status as a third-party beneficiary, is a borrower who has contractual rights. *See Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730 (Tex. App.--Dallas 1992, writ denied). She is entitled to enforce the conditions contained in the insurance policy that affect her. *See id.* (the "third-party beneficiary" . . . is entitled to rely upon and to enforce all of the contract's provisions."). Although the trial court erroneously found that Palma was not entitled to enforce the conditions contained in the contract for insurance, it proceeded to interpret the conditions contained in the contract for insurance in order to determine the amount of the deficiency that Verex was entitled to collect.

In finding of fact number five, the trial court found that Palma was entitled to a credit of $30,800 - the amount of proceeds received at foreclosure. In finding of fact number six, the trial

13

court found that "the deficiency debt due and owing, after applying all lawful and proper credits, is $115,825.14." This is the amount that the trial court determined that City Federal was entitled to collect from Palma - the same amount that was ultimately assigned to Verex. The trial court classified these findings as "findings of fact", but they were based upon the trial court's interpretation of conditions contained in the contract for insurance. Consequently, we conduct a de novo review in order to determine if the trial court erred when it determined the amount of the deficiency due and owing by Palma. *See Harbor Ins. Co.*, 990 F.2d at 199.

*a. Condition 10 and Bidding Requirements*

When City Federal elected to collect mortgage insurance proceeds, the contract for insurance imposed bidding requirements upon City Federal. These bidding requirements therefore impacted the amount that might remain as a deficiency after foreclosure on Palma's property. The relevant conditions of the policy form read as follows:

> 10. PROCEDURE UNDER FAULT ... The Insured shall also furnish to the Company, at least (15) days prior to the foreclosure sale, if any, a statement indicating the amount anticipated to be due, at the time of sale, to the Insured under the terms of the policy and *shall be required to bid, at the sale, the amount due to the Insured under the terms of the policy* (emphasis added) .
> . . .

> 11. COMPUTATION OF LOSS - The amount of loss payable to the Insured shall be limited to the principal balance due pursuant to the mortgage agreement, accumulated interest computed through the date of the tender of conveyance, as hereinafter set forth (penalty interest excluded), real estate taxes and hazard insurance premiums necessarily advanced.

14

13.   OPTION TO PAY A PERCENTAGE OF THE AMOUNT DUE - In lieu of conveyance of the title to the mortgage premises and payment in accordance with Condition 11, the Company shall have the option of paying the percentage of the amount due to the Insured in accordance with the amount of coverage selected and paid for as indicated on the face of the Certificate, or subsequent Certificate amendments, and shall have no claim to said real estate, such payment to be full and final discharge of the Company's liability.

Palma contends that under the provisions quoted above, if City Federal intended to collect the mortgage insurance proceeds it was required to bid the total amount of the debt due at foreclosure, thereby eliminating the deficiency balance on the note.

The trial court considered Palma's "full-debt bid argument" but rejected it.  In finding of fact number one the court found that Condition 10 did not require the lender to pay as its bid at foreclosure sale the full amount of the loan.  However, the trial court did not specify what Condition 10 did require of City Federal.

b.   *"Full-Debt Bid Argument"*

If City Federal intended to collect the proceeds of the mortgage insurance policy after foreclosure, Condition 10 required it to bid "the amount due to [City Federal] under the terms of the policy."  Palma contends that the amount due under the terms of the policy is to be determined by looking at the language contained in Condition 11, entitled "Computation of Loss".  If we were to adopt the reasoning proferred by Palma, we would be requiring lenders who entered into contracts prior to February 24, 1984,[6] to bid the

On this date the Texas Board of Insurance issued Board Order 44262, in which the language governing bidding requirements was

15

entire amount due under the terms of the mortgage if they intended to collect mortgage proceeds after foreclosure.

The approach urged by Palma is contrary to the law as it existed at the time in question. If a debtor wanted to challenge the amount bid by the lender at foreclosure the law in Texas required the debtor to establish: (1) that the amount of proceeds received from sale at foreclosure was "grossly inadequate", and (2) an irregularity in the foreclosure sale. Only after a finding of both "gross inadequacy" and irregularity would the court prohibit the proceeds from being used in calculating the deficiency. *Thompson v. Chrysler First Business Credit Corp.*, 840 S.W.2d 25, 33 (Tex. App.--Dallas 1992, no writ). Although this approach was amended by statute in early 1991,[7] the amendment does not affect our decision concerning what amount the lender was legally obligated to bid prior to the statutory change.

Condition 10 requires the lender to bid either: (1) the full amount of the balance due on the note, as defined in Condition 11, or (2) no less than twenty-five percent of the balance. Either of these approaches was permitted under the terms of the contract for insurance, as long as the amount bid was not "grossly inadequate"

---

deleted.

This judge-made rule was changed by statute in April of 1991, when the Texas legislature enacted § 51.003 of the Texas Property Code, which among other changes, permitted the borrower to request that the court in which the action is pending to determine the fair market value of the real [foreclosed] property as of the date of the foreclosure sale. If the court determines that the fair market value exceeded the foreclosure price at the time of foreclosure, the person against whom the deficiency is sought is entitled to an offset equal to the excess amount.

and there had been no irregularity in the foreclosure sale.

By requiring the lender to bid a minimum of twenty-five percent of the total amount due before being entitled to collect insurance proceeds, the borrower was afforded some degree of assurance that he would be receiving a fair credit on his deficiency balance. The lender still had to bid an amount that complied with Texas law, and this amount might be more than the minimum twenty-five percent, but in no event should it have been less. The lender could also bid an amount that was both less than twenty-five percent and not violative of Texas law, as long as he did *not* intend to collect mortgage guaranty insurance proceeds. Only when the lender intended to collect insurance proceeds would he be obligated under the terms of the contract to bid a minimum of twenty-five percent, assuming that this amount was neither "grossly inadequate" nor the result of an irregularitiy in the foreclosure sale.

In the instant case, City Federal purchased the property at foreclosure for $30,800.[8] This amount was then credited against

_____

Palma entered into an earnest money contract with a third party on April 7, 1988, wherein the parties agreed to a purchase price of $60,000. City Federal refused to approve the sale. Then, on November 28, 1983, the property was purchased at foreclosure by City Federal for $30,800. City Federal then collected insurance proceeds of $51,122.47 and subsequently sold the property for approximately $57,000 just two months later. Verex then was assigned the right to pursue Palma on the deficiency remaining on the note.

At trial, the general counsel for Verex, Thomas Anderson, stated that Verex occasionally advised lenders as to what amount to bid at foreclosure, but could not remember for certain if they had advised City Federal in the instant case. This is a peculiar practice, in light of the fact that Verex and City Federal disregarded the terms of the insurance contract that dictated

17

Palma's deficiency balance.  The trial court found that the amount bid by City Federal was not "grossly inadequate".  It is not necessary for us to determine whether the trial court erred when it found that the amount bid by City Federal was not "grossly inadequate" because it is clear that the trial court erred when it found that there had been no violation of Condition 10 of the contract.

If the trial court had interpreted Condition 10 as written, it would have found that City Federal was required to submit a minimum bid of twenty-five percent, or $37,139.72.[9]  The trial court's error in interpreting Condition 10 was compounded when it failed to properly credit the deficiency balance that would have remained after foreclosure.  Palma was entitled to a credit of $37,139.72 in proceeds from the sale at foreclosure, leaving a deficiency balance of $111,447.16.[10]  As discussed below the trial court further erred when it failed to credit this deficiency with the insurance proceeds received by City Federal.

---

bidding at foreclosure.
     It is apparent that a mortgage insurer, who intends to receive an assignment to pursue borrowers for deficiencies, has an interest in the property being sold at foreclosure for the lowest price possible.  After all, the insurer is obligated by contract to pay proceeds to the insured.  If he can minimize the amount received at foreclosure, then the amount of the remaining deficiency will be larger.  This is one of the dangers that the policy language protected against, and it provides support to our interpretation of the contractual conditions at issue in the instant case.


     Total indebtedness at time of foreclosure x .25, or: $148,558.88 x .25 = $37,139.72.

     Total indebtedness at time of foreclosure - sale proceeds, or: $148,588.88 - $37,139.72 = $111,447.16

18

### c. Condition 15 and Waiver of Subrogation

Condition 15 waived Verex's rights to pursue Palma "for any loss paid to the insured pursuant to this policy." The amount paid to City Federal was $51,122.47. It is clear that Palma was entitled to enforce the waiver of subrogation rights present in Condition 15, which entitled her to a credit of $51,122.47 on the amount assigned by City Federal to Verex.[11] The trial court should have properly credited the deficiency balance owed by Palma with the amount paid by Verex to City Federal. If it had done so it would have found that the deficiency assignable to Verex was $60,326.69.[12]

The errors commited by the trial court in determining the amount of the deficiency balance caused it to further err in finding of fact number eight. In finding of fact number eight the trial court stated that "Verex is the assignee of the deficiency claimed, and has the right to recover it under the lawful

_But cf. Hunt v. Jefferson Sav. & Loan Ass'n_, 756 S.W.2d 762, 765 (Tex. App.--Dallas 1988, writ denied), _cert. denied_, 489 U.S. 1079, 109 S. Ct. 1532, 103 L. Ed. 2d 837 (1989). In _Hunt_, the court found that the borrower was not entitled to an offset for mortgage insurance proceeds received by the lender. The instant case is distinguishable because we are not offsetting the amount recoverable by the lender. Instead, we are crediting the insurance proceeds against the amount assigned by the lender to the insurer because the insurance contract prohibits the insurer from recovering those proceeds. Additionally, since the time that _Hunt_ was written the Texas legislature has enacted § 51.003(d), which requires the lender to credit a borrower's deficiency balance with any mortgage insurance proceeds that are received. This enactment essentially reverses _Hunt_.

```
  $148,588.88 (total indebtedness at time of foreclosure)
- $ 37,139.72 (minimum bid required by Condition 10)
- $ 51,122.47 (Condition 15 limit on subrogation rights)
  $ 60,326.69 (amount assignable to City Federal)
```

19

assignment agreement." This finding is erroenous because the assignment agreement violated the express terms of the contract, thereby violating Palma's rights as a third-party beneficiary. As a result of the errors present in the trial court's finding of facts, we must reverse the judgment of the trial court.

2.  ILLEGAL ASSIGNMENT

Palma contends that the assignment agreement entered into between City Federal and Verex was illegal because it violated art. 21.21A of the Texas Insurance Code, which provides, in part:

> Section 1.  No insurer . . . may make any contract of insurance or agreement as to such contract other than as expressed in the policy issued thereon. . . .

> Section 3.  If any person violates any of the provisions of this Article, the person shall, in addition to any other penalty specifically provided, be guilty of a Class A misdemeanor.

> Section 4.  The commissioner, upon giving 10 days' notice of hearing by certified mail, and upon hearing, may suspend or cancel the certificate, charter, permit, or license to engage in the business of insurance of any society, association, corporation, or person violating the provisions of this Article.

The agreement entered into between Verex and City Federal clearly violated the original contract for insurance. The assignment agreement gave Verex the right to pursue Palma for the entire amount of the deficiency balance. This amount included the amount which Verex had paid to City Federal in insurance proceeds, which, as previously stated, violated Condition 15's limitation on Verex's subrogation rights. Under art. 21.21A the agreement was "other than as expressed in the policy" and was therefore illegal. "It is a familiar law of contracts that an illegal agreement is

20

unenforceable." *DiFrancesco v. Houston Gen. Ins. Co.*, 858 S.W.2d 595, 598 (Tex.App--Texarkana 1993, no writ). The illegality of the agreement giving Verex the right to pursue Palma for the deficiency provides an independent ground for reversing the judgment of the trial court.

   3.  PUBLIC POLICY

   Our decision to reverse the judgment of the trial court is strenghted by public policy considerations. The public policy of the State of Texas may be derived from its constitution, statutes, and judicial decisions. *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341, 342 (Tex. Civ. App.--Fort Worth 1972, writ ref'd n.r.e.). Terms and conditions in the contract for insurance, which have been prescribed and approved by the Insurance Board, represent the public policy of the state. *Id.* However, actions by the Board which are contrary to relevant statutes or decisions of the courts do not represent public policy. *See American Liberty Ins. Co. v. Ranzau*, 481 S.W.2d 793, 796-97 (Tex. 1972) ("the Board may not act contrary to but only consistent with, and in furtherance of, the express statutory purposes."); *Nat'l County Mut. Fire Ins. Co. v. Johnson*, 829 S.W.2d 322, 326 (Tex. App.--Austin 1992, writ denied)(Insurance Board's actions which are contrary to express legislative policy do not represent public policy).

   In the instant case there are no statutes or judicial decisions for the time period in question that provide us with guidance for determining the public policy as it relates to the

21

propriety of the assignment agreement entered into between Verex and City Federal.[13] However, because the language contained in the contract for insurance was expressly approved and adopted by the Texas Board of Insurance, we have a basis for discerning Texas' public policy as it relates to the actions of Verex. *See Wallgren*, *supra.*

On May 11, 1970, the Texas Board of Insurance issued Board Order 13772. As required by statute, Verex incorporated every condition contained in the order into its policy for mortgage insurance. Included in the order were Conditions 10 and 15, which as previously discussed, were both violated by City Federal and Verex. Condition 10 was violated when City Federal failed to place a proper bid at foreclosure, which resulted in a larger deficiency than would have existed if City Federal had placed a proper bid. Verex then pursued Palma for this incorrect deficiency without crediting it with the amount of insurance proceeds paid to City

---

It is clear that the current public policy of Texas clearly prohibits the assignment agreement at issue. The current statute, which partially governs mortgage guaranty insurance, in part provides:

> No policy of mortgage guaranty insurance shall contain a provision which allows subrogation rights *or any other claim* by the insurer against the borrower for a deficiency arising from a foreclosure sale of a single-family dwelling occupied by the borrower as the principal residence of the borrower.

Tex. Ins. Code Ann. Art. 21.50 § 1A(c) (Vernon 1996)(emphasis added). Assignment of the right to pursue Palma for a deficiency falls squarely within the prohibition restricting insurers from pursuing borrowers for deficiencies via "subrogation rights or any other claim". However, because the contract for insurance between Verex and City Federal was entered into in late 1983 we must determine what the public policy of Texas, as it relates to mortgage guaranty insurance, was at that time.

Federal.  Their failure to credit the deficiency balance resulted in a violation of Condition 15.  The violations of Conditions 10 and 15 were violations of the public policy of the State of Texas and they provide an independent basis for reversing the judgment of the trial court.

    C.  CLASS CERTIFICATION

Palma contends that the district court improperly considered the merits of the case when determining whether the case should be certified as a class action.  There were approximately sixteen separate issues disposed of by the trial court's judgment, including the trial court's decision not to certify Palma's claims in a class action.  However, the only issues addressed by Palma on appeal are: (1) the trial court's grant of summary judgment based upon its finding of lack of standing to sue under art. 21.21, (2) the trial court's judgment denying Palma relief for wrongful foreclosure, and (3) the trial court's judgment on Verex's deficiency claim and the related claim for attorneys' fees.  Because she did not raise the other claims on appeal, the trial court's disposition of those other claims is final.  *See Matter of Texas Mortgage Servs. Corp.*, 761 F.2d 1068, 1073 (5th Cir. 1985) ("issues not raised on appeal in the brief of the Appellant may be considered waived, and they cannot be noticed or entertained by the Court of Appeals").  The finality of those other rulings precludes her from qualifying as a class representative in the event a class is subsequently certified wherein the class representative asserts claims that are the same or substantially similar to those asserted

23

by Palma which were not appealed.  *See* Fed. R. Civ. P. 23(a) (class representative must "fairly and adequately protect the interests of the class").  Therefore, we need not determine whether the trial court erred when it denied class certification.

## IV.  CONCLUSION

Palma requests this court to reverse the judgment of the trial court.  However, the only issues that have been adequately briefed are those that relate to wrongful foreclosure, Verex's counterclaim for the deficiency and attorneys' fees, and the grant of summary judment to Verex on the issue of standing under art.21.21. Accordingly, our reversal of the trial court's judgment is limited to those issues.  All issues not raised are waived and the judgment is final as to those other issues.  Therefore, the judgment of the trial court is REVERSED in part, AFFIRMED in part, and the case is REMANDED for further proceedings consistent with this opinion.

DAVIS, W. EUGENE, Dissenting:

I disagree with the majority's legal conclusion that Palma is a third-party beneficiary of Verex's policy.  I therefore dissent.

24

The majority holds that Clause 15 of the policy makes Palma a third-party beneficiary to the insurance contract. Clause 15 provides:

NO RIGHT OF SUBROGATION AGAINST THE BORROWER.

The Borrower shall not be liable to the Company for any loss paid to the Insured pursuant to this policy; provided, however, that the real estate shall consist of a single-family dwelling occupied by the Borrower; otherwise, the Company reserves the right to make a claim against the Borrower for any loss paid or deficiency suffered by the Company.

I agree with the majority that, when its conditions are met, Clause 15 is designed to afford a waiver of subrogation from the insurer to the borrower. It is clear to me, however, that in this case all of the conditions were not met; the real estate which served as collateral for the subject loan was not a "single family dwelling occupied by the borrower" at the time of the loss.

The majority disposes of the occupation condition by concluding that the policy is ambiguous-- one reasonable interpretation is that the occupation requirement must be met at the time the policy issues; another is that it must be met at the time of the loss. Having declared Clause 15 ambiguous, the majority then resolves the ambiguity against the insurer. The majority concludes that Palma, therefore, is a third-party beneficiary even though, at the time she defaulted on the loan, she had long since ceased to live on the premises.

Unlike the majority, I find no ambiguity in Clause 15. It focuses the reader on the relevant time period: "the borrower shall not be liable to the company for any loss paid to the insured

25

pursuant to this policy." This phrase orients the clause toward the time when the insured suffers a loss. And the earliest such a loss can occur is the date on which the borrower defaults. In sum, I read Clause 15 to give the borrower the right to insist that the insurer waive any right of subrogation against her for any insurance proceeds paid to the insured if, but only if, the borrower occupied the premises at the time of the default. Thus, Palma is not a beneficiary because she did not occupy the premises when she defaulted. Therefore, she has no right to claim a waiver of subrogation.

Even if we assume, however, that this clause is ambiguous as to when the borrower must occupy the premises, I would still conclude that Palma is not a third-party beneficiary. Texas law requires that one claiming to be a third-party beneficiary establish that the parties to the contract clearly intended to benefit her. In Corpus Christi Bank & Trust v. Smith, 525 S.W.2d 501, 503-04 (Tex. 1975), the Texas Supreme Court summarized this well-established rule as follows:

> The intention of the contracting parties is of controlling significance to a determination that a third party may enforce the contract provision. In deriving intent, we must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the contracting parties. (citations omitted).

Contrary to the majority's conclusion, Palma cannot bootstrap a finding of third-party beneficiary status from an ambiguous provision. The contract must clearly demonstrate that the parties

26

intended to benefit her.

Republic National Bank v. National Banker's Life Insurance Co., 427 S.W.2d 76 (Tex. Civ. App.--Dallas 1968, writ ref'd n.r.e.), relied upon by the majority, does not purport to announce a different rule. In that case, an intermediate Texas court stated the third-party beneficiary rule as follows: "Where a stranger contends that it was intended that the provisions of a contract should inure to his benefit such intention must be clearly apparent. If there is any doubt concerning the intent in this regard as it appears from the contract itself, such doubt should be construed against such intent." Id. at 80. A stranger to a contract is one who is not a party to the contract. As evidenced by her efforts to achieve third-party beneficiary status, Palma was not a party to this insurance contract between Verex and City Federal. If there is any lingering doubt on this point, the Texas cases interpreting mortgage guaranty insurance policies unanimously hold that a borrower is not a party to such contracts. Pineda v. PMI Mortgage Ins. Co., 843 S.W.2d 660 (Tex. App.--Corpus Christi 1992), writ denied per curiam, 851 S.W.2d 191 (Tex. 1993); Shields v. Atlantic Fin. Mortgage Corp., 799 S.W.2d 441, 444 (Tex. App.--El Paso 1990, no writ); Hunt v. Jefferson Savings & Loan Assoc., 756 S.W.2d 762, 765 (Tex. App.--Dallas 1988, writ denied), cert. denied, 489 U.S. 1079, 109 S. Ct. 1532, 103 L. Ed. 2d 837 (1989).

In conclusion, because Palma was not occupying the premises at the time the insured suffered the loss, Palma cannot clearly establish that she is a third-party beneficiary of Clause 15. And,

27

without third-party beneficiary status, Palma may not claim the benefit of the policy's waiver of subrogation clause.  I would therefore affirm the district court's judgment.