**Opinion issued February 6, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-19-00727-CV

_____

## IN RE AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

### MEMORANDUM OPINION

Relator, American National Property and Casualty Company (ANPAC), has filed a petition for writ of mandamus asking that we compel the trial court to vacate its September 25, 2019 order compelling appraisal.[1] We granted ANPAC's motion

---

[1] The underlying case is *Mark Rennison v. American National Property and Casualty Company*, cause number 1126978, pending in the County Civil Court at Law No. 4 of Harris County, Texas, the Honorable Leslie Briones presiding.

for emergency relief, staying the order compelling appraisal and requesting a response. We conditionally grant relief.

## Background

Vanderbilt Mortgage Finance Inc. is the mortgagee of the property at issue. Mark Rennison is the homeowner-mortgagor of the property. Vanderbilt purchased a certificate of lender-placed insurance from ANPAC that "insures the lender's collateral when the borrower fails to maintain a specific type of insurance." Rennison is not a named insured on the policy—the policy expressly excludes Rennison as a named insured. The only other named insured on the policy is another mortgage company. The policy states that it will pay for "direct, sudden and accidental loss to insured property." The insurable interest is the "net principal balance" and interest as of the date of loss.

After Hurricane Harvey, Vanderbilt submitted an insurance claim for damage to the property and a payment was issued to Vanderbilt for $5,073.63. In November 2018, Rennison sent a letter to ANPAC via a third-party adjuster, contesting the damages and demanding an appraisal under the policy. ANPAC responded to Rennison that Rennison was not the insured and he had no right to demand appraisal.

In January 2019, Rennison filed suit. ANPAC filed a plea to the jurisdiction, arguing that Rennison was not a party or third-party beneficiary of the policy and thus, had no standing to sue. The trial court granted the plea in June 2019, but on

2

August 15, 2019, the trial court issued an order granting Rennison's motion for new trial. Rennison requested an appraisal, which the insurance contract provides for if the parties are unable to agree on the amount of loss. On September 25, 2019, the trial court issued an order compelling appraisal.

## Analysis

ANPAC raises three issues: (1) the trial court's order is void because Rennison lacks standing; (2) Rennison has no standing to enforce the policy appraisal provision; and (3) Rennison is not a third-party beneficiary of the policy.

### A. Mandamus Standard of Review

Mandamus will issue to correct an abuse of discretion when no adequate remedy by appeal exists. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding). Generally, appellate courts will hold that a trial court has abused its discretion if its actions were "without reference to any guiding rules and principles" or "arbitrary or unreasonable." *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Mandamus is available when an order is void, and if the order is void, there is no requirement for a showing of an adequate remedy by appeal. *See In re Thompson*, 569 S.W.3d 169, 172 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding). Subject matter jurisdiction is essential to a court's authority. *See Tex. Ass'n of Bus.*

*v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). An order is void if the trial court lacks subject-matter jurisdiction. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). "Standing, a component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining suit under Texas Law." *Sherman v. Boston*, 486 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Therefore, a trial court only has subject-matter jurisdiction if the claimant has standing to assert the claim. *See Joachim*, 315 S.W.3d at 865. Because a party's standing is a question of law, we review it de novo. *In re McDaniel*, 408 S.W.3d 389, 397 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding).

### b. Third-Party Beneficiary Status

Insurance contracts are construed with the same rules of construction as ordinary contracts. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). To determine whether a third party may recover on a contract between other parties, we look to the intent of the contracting parties. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). A third party may recover only if the contracting parties intended for the third party to benefit and only if the parties entered into the contract for the third parties' benefit. *Id.* The intent to confer third-party beneficiary rights must be clearly spelled out in the contract, and therefore, courts presume that the contracting parties intended the contract for themselves

unless the contract contains a clear indication of intent to benefit a third party. *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011).

A third party may not enforce a contract when it confers only an incidental, indirect benefit on the third party. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Instead, the third party must be either a donee beneficiary or creditor beneficiary. *See Lomas*, 223 S.W.3d at 306. To be a donee beneficiary, the contract must promise performance as a donation. *See id.* If performance of the contract satisfies some "duty or legally-enforceable commitment owed by the promisee, then the third party is considered a creditor beneficiary." *Id.*

### c. **Rennison is not a third-party beneficiary**

Rennison asserts that he is an additional insured and a third-party beneficiary because he maintains a residence in the home covered under the policy, paid the premiums, and is the one who files claims under the policy. Rennison's argument indicates that he believes he is a creditor beneficiary. Although he cites no case authority concerning third-party beneficiaries in his response to the petition, Rennison claimed in his motion for new trial that *Alvarado v. Lexington Insurance Company*, 389 S.W.3d 544 (Tex. App.—Houston [1st Dist.] 2012, judgment vacated pursuant to settlement, opinion not withdrawn) supported his claim of coverage

because the subrogation clauses and provisions for temporary housing in both policies are similar.[2]

When this Court decided the *Alvarado* case, there were no Texas cases addressing the issue of "whether a homeowner-borrower qualifies as a third-party beneficiary under a force-placed insurance policy entered into between the insurance company and the mortgage company." *Alvarado*, 389 S.W.3d at 553. Therefore, the Court reviewed authority from the federal courts for guidance. The Court observed that federal courts tended to focus on whether the policy contained "(1) an 'excess loss' or 'residual payment' clause or (2) a clause providing that the insurer will adjust all personal property losses with, and pay any such proceeds to, the homeowner-borrower." *Id.* at 553–54. *Alvarado* quoted the following as a typical excess loss clause:

> We will adjust all losses with you [the mortgagee and named insured]. We will pay you but in no event more than the amount of your interest in the "insured location." Amounts payable in excess of your interest will be paid to the "borrower" unless some other person is named by the "borrower" to receive payment.

*Id.* at 554.

---

[2] In his motion for new trial, Rennison cited to the *Alvarado* opinion that was withdrawn on rehearing, but much of the same discussion was in the opinion issued on rehearing. *See Alvarado v. Lexington Ins. Co.*, 371 S.W.3d 417 (Tex. App.—Houston [1st Dist.] 2012), opinion withdrawn and superseded on rehearing, 389 S.W.3d 544 (Tex. App.—Houston [1st Dist.] 2012, judgment vacated pursuant to settlement, opinion not withdrawn).

6

The *Alvarado* court determined that the "Special Broad Form Homeowners Coverage" contained in Endorsement #12 to the policy was analogous to an excess loss clause and manifested a clear intent to benefit the homeowner. *See id.* at 556, 558–59. Endorsement #12 included definitions and defined "Insured" in terms that could reasonably be interpreted to refer only to the homeowner. *Id.* at 560. This section of Endorsement #12 defined "you" and "your" to refer to "the 'named insured' shown in the Declarations and the spouse if a resident of the same household." *Id.* Another definition of "Insured" defined it as "'[y]ou and residents of your household who are . . . [y]our relatives; or . . . [o]ther persons under the age of 21 and in the care of any person named above.'" *Id.* Based on these definitions, the Court determined that the term "insured" in the policy referred to the homeowner and not to the "Named Insured" mortgage company. *See id.* at 561.

Moreover, the coverages contained in this portion of the *Alvarado* policy clearly indicated that the parties intended to confer a benefit on the homeowner because there was coverage for personal property and loss of use, including additional living expenses. *See id.* And the policy stated that if a mortgagee was named in the policy, "any loss payable . . . will be paid to the mortgagee *and you*, as interests appear." *Id.* (emphasis in original). Based on the policy definitions and coverages, this Court concluded that the contracting parties clearly intended for the

7

homeowner to benefit from the policy and thus, the homeowner who paid premiums was a creditor third-party beneficiary. *See id.* at 561–62.

The policy here contains an excess loss clause as follows:

> 16. **Loss Payment**
>
> . . . .
>
> c. **We** will not pay **you** more than **your insurable interest** in the covered property.
>
> d. **We** may adjust losses with the owners of lost or damaged **property** if other than **you**. If **we** pay the owners, such payments will satisfy **your** claims against **us** for the owners' **property**. **We** will not pay the owners more than their financial interest in the insured property.

This language does not appear to provide any coverage to the homeowner, but it does give ANPAC the option of paying the owner, rather than the named insured, the amount of the named insured's claim. And the definitions clearly refer only to the mortgage company, not to the homeowner. The policy defines "You, your and named insured," as those terms are used in the policy, to refer only to the named insured/mortgagee Vanderbilt. And, the terms "We, us and our" are defined to refer to ANPAC. "Your insurable interest" is defined to be the mortgage company's "interest in the property" and "is limited to the net principal balance plus any accrued interest . . . as of the date that any loss is reported to us."

The policy sets out the duties of the named insured and the mortgagor, which includes notifying ANPAC immediately of any damage, making a list of damaged or destroyed insured property in detail with attached bills or other documents to

8

substantiate the amounts in the list, and sending to ANPAC, within 60 days of the loss, a proof of loss signed and sworn to by the named insured and the mortgagor. Although the policy permits ANPAC to adjust losses with the owners of lost or damaged property other than the named insured mortgagor in satisfaction of the named insured's claims against ANPAC, this does not indicate that the homeowner has coverage for its interest because the payment only concerns the named insured's interest. No provision of the policy or endorsement provides coverage to Rennison or creates a duty owed to Rennision that a provision in the policy will satisfy.

In his motion for new trial, Rennison referred to the subrogation clause and provision for temporary housing as proof of intent to confer a benefit. The policy's subrogation provision states:

> Before a loss occurs, you or the mortgagor may waive in writing all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss up to the amount of any payment made by us. If an assignment is sought, you and the mortgagor shall cooperate with us, including signing and delivering to us all related papers.

This does not confer a benefit on Rennison. Although Rennison cites to the *Alvarado* case, the conclusion that the policy in *Alvarado* reflected an intent to benefit the homeowner was not based on a subrogation clause, but on an endorsement with definitions and coverages that clearly covered the homeowner. *See Alvarado*, 389 S.W.3d at 560–61. The *Alvarado* court discussed a subrogation

9

clause held to benefit a homeowner in *Palma v. Verex Assurance, Inc.*, 79 F.3d 1453, 1461 (5th Cir. 1996), but that subrogation clause was substantially different from the one in this policy and thus it provides no support for Rennison's argument. The policy in *Palma* was a mortgage insurance policy and the subrogation provision waived the insurer's right to pursue the homeowner for any loss paid to the insured and thus, the Fifth Circuit held that the homeowner should receive the same credit on the deficiency balance that was paid to the insured mortgage company. *See Palma*, 79 F.3d at 1454, 1458, 1460. No such benefit to the homeowner flows from the subrogation provision in the ANPAC contract.

Rennison also claimed in his motion for new trial that the courts will find third-party beneficiary status when there is a provision for temporary housing for the homeowner. The *Alvarado* court cited to *Henderson v. Certain Underwriters at Lloyds*, No. 09–1320, 2009 WL 3190710 (E.D. La. Sept. 30, 2009), in which the court held that the homeowner had standing to seek temporary housing because this was the only policy provision that provided a direct benefit to the homeowner. *See Alvarado*, 389 S.W.3d at 553 (citing to *Henderson*, 2009 WL 3190710, at * 3). But, no provision in the ANPAC contract provides temporary housing to Rennison and thus, *Henderson* is inapplicable here.

Because no provision reflects an intent by the contracting parties to create a duty owed to Rennison, this case is analogous to *Garcia v. Bank of Am. Corp.*, 375

S.W.3d 322 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In *Garcia*, the homeowner failed to renew his homeowner's insurance policy and his mortgagee, Countrywide Home Loans, purchased a "lender-placed" policy from Newport Insurance, which listed Countrywide as the only insured party. *Id.* at 325. Garcia's house suffered significant damage from Hurricane Ike. *See id.* Garcia sued Newport and two other banks that had taken over the mortgage from Countrywide, claiming Newport failed to adequately compensate him under the policy. *See id.* The trial court granted summary judgment to all three defendants based on Garcia's lack of standing to sue under the contract. *See id.* The judgment was affirmed on appeal, in part based on Garcia's lack of standing to sue. *See id.* at 327–28. The court determined that no policy provision created a duty owed to Garcia that benefits under the policy would have satisfied, and therefore Garcia could not be a creditor third-party beneficiary. *Id.* at 328.

As in *Garcia*, no provision of the ANPAC policy creates a duty owed to Rennison that benefits under the policy would satisfy. As in *Garcia,* the mortgagee (Vanderbilt) contracted with the insurer (ANPAC) to protect the mortgagee's security interest in the property. Rennison, the mortgagor, is not named in the policy, but only referenced as the mortgagor. Even if the policy had named him, identification in a policy is not determinative of benefits. *See id.* at 327. No provision in the policy indicates an intent by the parties to make a gift to Rennison and thus,

11

he is not a donee beneficiary. And no provision in the policy creates a duty owed to Rennison because there is no contractual obligation or other legally enforceable commitment to Rennison. Rennison argues that he paid all the policy premiums to Vanderbilt, but he offers no proof supporting that argument and mere payment of premiums, without more, has not been held to confer third-party beneficiary status. *See Alvarado*, 389 S.W.3d at 555.

The appraisal section of the contract states: "If **you** and **we** fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal." As defined by the contract, "you" refers to the named insured Vanderbilt and "we" refers to ANPAC. Rennison has no standing as to seek appraisal under this portion of the contract. Accordingly, the trial court's order granting Rennison's motion to abate and compel appraisal is void.

## Conclusion

Because Rennison did not establish that he had a right to enforce the policy as a third-party beneficiary, he has no standing to seek appraisal and the trial court's order granting appraisal is void. We conditionally grant the writ and direct the trial court to vacate its September 25, 2019 order for appraisal. We are confident that the trial court will promptly comply, and the writ will only issue if it does not.

**PER CURIAM**

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.