The TALMAN HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF ILLINOIS, Plaintiff–Appellant,

v.

AMERICAN BANKERS INSURANCE, Defendant–Appellee.

No. 90–8297.

United States Court of Appeals, Fifth Circuit.

March 7, 1991.

Mark L. Withrow, Richard Davis, Turpin, Smith, Dyer Saxe & MacDonald, Midland, Tex.  Lawrence R. Desideri, Duane M. Kel-

ley, Kenneth T. Kristi, Timothy P. O'Connor, Winston & Strawn, Chicago, Ill., for plaintiff-appellant.

James Jorden, Douglas H. Stein, Markham R. Leventhal, Andrew V. Tramont, Jr., Jorden, Schulte & Burchette, Miami, Fla., Richard Edward Booth, William B. Browder, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, Tex., for defendant-appellee.

Before WISDOM, KING, and JOLLY, Circuit Judges.

WISDOM, Circuit Judge:

This case involves an appeal by Talman Home Federal Savings & Loan Association of Illinois (Talman)[1] from a district court decision dismissing Talman's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. After reviewing the district court's dismissal *de novo*, we have concluded that the district court's decision that Talman can prove no facts in support of its complaint which would entitle it to relief was correct. Accordingly, we AFFIRM.

## BACKGROUND

Talman, an Illinois savings & loan association, brought this action to recover as a third-party beneficiary of a credit insurance policy issued by the defendant/appellee American Bankers Insurance Company of Florida, Inc. (American Bankers) to Home Savings Association (Home Savings), a state chartered savings & loan association in Midland, Texas.

Between 1982 and the fall of 1988, Home Savings was lending money to borrowers to purchase mobile homes. Prior to 1983, American Bankers sold property damage insurance for mobile homes sold by A–1, Inc. and for which Home Savings would lend the purchase price. In early 1983, American Bankers developed a product known as "credit bond insurance" or "private credit insurance."[2] Beginning on July 6, 1983, American Bankers issued a Private Credit Insurance Policy (Insurance Policy) to Home Savings to insure its mobile home loans against loss due to borrower defaults. American Bankers agreed to insure individual loans and to provide Home Savings with Commitments of Insurance for the individual loans under the Insurance Policy.

On July 18, 1984, Home Savings and Talman entered into a Manufactured Housing Participation Purchase Agreement (Participation Agreement). Under this Participation Agreement, Talman purchased from Home Savings the beneficial interest in the form of a "participation" in over 1,500 mobile home loans. The Participation Agreement provides that Home Savings shall continue to hold legal title as trustee to the loans and shall continue to service and administer the loans in return for a service fee. Home Savings specifically warranted in the Participation Agreement that the loans covered by that agreement would be insured by American Bankers,[3] but Home Savings retained the exclusive right to submit claims under any insurance

---

1. Talman has been replaced in this litigation by its assignee, Statewide Capital Inc.; however, in this opinion we refer to the appellant as Talman.

2. In its Lender/Servicer Manual, American Bankers described the purpose of its credit insurance policy as follows:

   American Bankers developed the Credit Insurance Policy for customers of American Bankers. We value your business. The need for a viable Credit Insurance Policy to gain access to the investor market whether developed by the originator or American Bankers became quite clear. Investors and lenders interest in

   manufactured housing has grown dramatically, but they want the protections afforded them through "Insured Programs." We at American Bankers want you—our customer to have the tools necessary to continue as a viable source in the marketplace. Hence the Credit Insurance Policy.

3. Clause (h) of Part III of the Participation Agreement states:

   Seller will obtain, has applied for, or has obtained a primary policy or private credit bond insurance for each Contract from American Bankers Insurance Company of Florida and said insurance is in full force and effect or will so be on Purchase Date.

policies. Moreover, the Participation Agreement provided that the insurer has no obligation to any other party than the approved lenders.

Home Savings and American Bankers later became involved in a lawsuit. On September 24, 1987 American Bankers and Home Savings settled their lawsuit and entered into a Settlement Agreement which modified their Insurance Policy. As part of the Settlement Agreement the parties agreed that:

> (4) American Bankers shall maintain, in full force and effect, the Certificates of Insurance currently in effect for outstanding Home Savings Association loans.
>
> (5) In return for American Bankers' undertaking described in paragraph (4) above, and in lieu of premiums due under the Policy, Home Savings Association and A–1 Inc. agree to indemnify American Bankers for any payments made to the investors in the secondary market pursuant to their obligations under the Certificates of Insurance....

Paragraph 5 goes on to detail the security arrangements set up to secure American Bankers in the event Home Savings defaults on its indemnity obligations.[4]

After the Settlement Agreement was signed, Home Savings continued to perform its obligations to Talman under the Participation Agreement by servicing the loans covered by the Participation Agreement and by paying off loans which became more than 90 days in default.

In 1988, the Federal Home Loan Bank Board (FHLBB) declared Home Savings insolvent and appointed the Federal Savings & Loan Insurance Corporation (FSLIC) as sole receiver of Home Savings. On October 14, 1988, FSLIC, in its capacity as receiver for Home Savings, entered into an acquisition agreement with Olney Savings & Loan Association (Olney). Olney acquired all of Home Savings's assets, includ-

ing assets or property held by Home Savings in trust or subject to arrangements in the nature of a trust. Olney also acquired the Home Savings Association Mortgage Company, the company that serviced Talman's loans under the Participation Agreement. Home Savings Association Mortgage Company continued to service Talman's loans.

FSLIC informed Talman that it considered Talman an unsecured creditor of Home Savings with respect to the Participation Agreement, and that the claims of Home Savings's unsecured creditors are worthless. American Bankers refused to honor claims submitted to it for losses by Talman under the loans, and takes the position that it will not honor any such claims in the future.

Talman sued American Bankers in November 1989, contending that it was a third-party beneficiary of the Insurance Policy, as modified by the Settlement Agreement, and the Commitments of Insurance. Talman sought damages, an order requiring American Bankers to honor its obligations under the policy as modified or, alternatively, declaratory relief. On May 9, 1990, the district court dismissed Talman's complaint with prejudice under Fed.R.Civ.P. 12(b)(6). Talman appealed.

## DISCUSSION

*Is Talman a third-party beneficiary of the contract between American Bankers and Home Savings?*

### A. TEXAS LAW

■ Under Texas law, in order for Talman to qualify as a third-party beneficiary of the Insurance Policy and Commitments of Insurance, as modified by the Settlement Agreement, Talman had to prove three things: (1) that Talman was not privy to the written agreements; (2) that the contracts were actually made for Talman's benefit; and (3) that the contracting parties

---

**4.** Basically, these security arrangements provided that Home Savings would place in trust for the benefit of American Bankers the titles to the repossessed units. American Bankers agreed to release title to each unit as it was sold, provided

Home Savings placed 10% of the sales price in trust for the benefit of American Bankers should Home Savings default on its indemnity agreement. Obviously, American Bankers was a secured creditor of Home Savings.

intended for Talman to benefit by their written agreements. *See Hellenic Invest., Inc. v. Kroger Co.,* 766 S.W.2d 861, 864 (Tex.App.1989) (citing *Republic Nat'l Bank v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ.App.1968, writ ref'd n.r.e.)).

American Bankers does not dispute that Talman was not privy to any of the agreements American Bankers made with Home Savings. Thus, the issue before us is whether Talman meets the last two elements of the *Hellenic* test: Talman must show that American Bankers and Home Savings made their contracts for Talman's benefit and intended for Talman to benefit by their contracts.

■ In determining intent under Texas law, this Court must begin with the presumption that parties contract for themselves; thus, it follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that this was the intention of the contracting parties. *See Republic Nat'l Bank,* 427 S.W.2d 76, 79 (Tex.Civ. App.1968, writ ref'd n.r.e.); *Hellenic,* 766 S.W.2d at 865; *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503–04 (Tex.1975); *Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1455 (5th Cir.1987).

Furthermore, any intent of the contracting parties to benefit a third-party is to be derived solely from the language of the contract. "It is the intention and purpose of the contracting parties, as disclosed within the four corners of the instrument, which should control." *Republic Nat'l Bank,* 427 S.W.2d at 79. *See also Taggart v. Crews,* 521 S.W.2d 703, 708 n. 5 (Tex.Civ. App.1975) ("Whether a third-party is a third-party beneficiary depends on the intention of the parties as expressed in the language used in the instrument itself."); *Cunningham,* 824 F.2d at 1457–58 ("[I]n Texas the law is clear that one claiming to be a third-party beneficiary succeeds or fails according to the provisions of the contract sued upon.").

In sum, "[w]here a stranger contends that it was intended that the provisions of a contract should inure to his benefit such intention must be clearly apparent. If there is any doubt concerning the intent in this regard as it appears from the contract itself, such doubt should be construed against such intent." *Republic Nat'l Bank,* 427 S.W.2d at 80.

Talman argues that this Court can look beyond the four corners of the contract in determining the intent of the parties with regard to third-party beneficiaries. Talman refers us to *Sowell v. Northwest Cent. Pipeline Corp.,* 703 F.Supp. 575 (N.D.Tex.1988) in which the court stated that to decide the intention of the contracting parties regarding the existence of a third-party beneficiary, "a court should look primarily to the contract itself." *Sowell,* 703 F.Supp. at 581 (citing *Republic Nat'l Bank,* 427 S.W.2d at 79). The *Sowell* court went on to say, however, that "[c]ourts may also consider the circumstances surrounding the execution of the contract." *Id.* at 581 (citing *Guardian Financial Corp. of Beaumont v. Rollins,* 312 S.W.2d 553, 560–61 (Tex.Civ.App. 1958)).

The *Sowell* court recognized that it was bound by the holding in *Republic Nat'l Bank*; however, the *Sowell* court seems not to have fully comprehended that holding, as is evident from its citation to *Republic Nat'l Bank* for the proposition that a court should look "primarily" to the contract itself in determining the intent of contracting parties to benefit a third-party. Instead, *Republic Nat'l Bank* plainly stated:

The cardinal rule of construction as applied to all contracts is to ascertain the intention of the parties as expressed in the language used in the instrument itself. It is the intention and purpose of contracting parties, as disclosed within the four corners on the instrument which should control. In this connection it must be emphasized that it is not the intention which the parties may have had, but failed to express in the instrument, but it is the intention which by said instrument they did express. Stated another way, the question is not what the

parties meant to say, but the meaning of what they did say. 427 S.W.2d at 79–80. Justice Holmes's great aphorism is as true of contractual construction as it is of statutory constructions: "We do not inquire what the legislature meant; we ask only what the statute means." Holmes, The Theory of Legal Interpretation, 12 Harv.L.Rev. 417, 419 (1898).

■ This Court has adopted the interpretation of Texas law represented by *Republic Nat'l Bank* and rejects any interpretations to the contrary. In our recent decision in *Cunningham*, this Court found that when parties have executed a written contract, "then the search for the parties' intent regarding a third-party beneficiary is limited to 'the four corners of the [written] instrument.'" 824 F.2d at 1458 (citing *Republic Nat'l Bank*, 427 S.W.2d at 79). Accordingly, we hold that any determination as to whether Talman was a third-party beneficiary of the agreement between American Bankers and Home Savings must be made solely on the basis of the Insurance Policy, and the Commitments of Insurance, as modified by the Settlement Agreement. We decline to look at the Lender/Servicer Manual, the Participation Agreement, or any other documents in determining the intent of American Bankers and Home Savings to benefit Talman.

### B.  APPLYING TEXAS LAW TO TALMAN'S SITUATION

Talman argues that, even by strictly applying the four corners rule, it should be considered a third-party beneficiary of the Insurance Policy, as modified by the Settlement Agreement, and the Commitments of Insurance between American Bankers and Home Savings. Talman's argument is that under the Participation Agreement between Talman and Home Savings, Home Savings had an obligation to insure Talman's loans with American Bankers. In addition, under the Settlement Agreement, American Bankers agreed to keep its insur-

ance in force, but required Home Savings to indemnify it and provide arrangements securing the indemnity for payments made to investors in the secondary market.[5] Talman concludes that Home Savings is not the direct beneficiary of the Insurance Policy since Home Savings must indemnify the insurer for payments made to others in exchange for American Bankers keeping the insurance in force. Accordingly, Talman argues that it is a third-party beneficiary because performance of the promise would satisfy an actual or supposed or asserted duty of the promisee to the third-party, and no intention to make a gift appears. *See Cumis Ins. Society v. Republic Nat'l Bank*, 480 S.W.2d 762, 767 (Tex.Civ. App.1972, writ ref'd n.r.e.). Talman concludes that it is a classic creditor beneficiary of the Insurance Policy, as modified by the Settlement Agreement, and the Commitments of Insurance.

#### 1.  *Insurance Policy*

■ We find that the provisions contained within the four corners of the Insurance Policy standing alone do not state or imply any intent on the part of American Bankers or Home Savings to benefit Talman. The Insurance Policy names only Home Savings as the insured, and does not mention Talman. We find no evidence of intent on the part of either American Bankers or Home Savings to benefit anyone other than themselves.

The Insurance Policy imposes a duty on American Bankers to perform for Home Savings as the exclusive servicer. The Insurance Policy also prohibits the assignment of the loan servicing rights, under which claims are submitted and insurance benefits are paid, without American Bankers's prior approval.

Furthermore, the Insurance Policy expressly prohibits third-party suits making American Bankers a party to any action to determine Home Savings's liability. The Insurance Policy states: "[Home Savings's] policy does not give anyone the

---

**5.**  *See* the exact wording of Paragraphs 4 and 5 of the Settlement Agreement as detailed in the  BACKGROUND section of this Opinion.

right to make [American Bankers] a party to any action to determine [Home Savings's] liability." Talman contends that this clause is not a contractual bar to the present action because it does not prohibit direct actions solely against American Bankers by third parties; in other words, Talman contends that its suit is to determine the liability of American Bankers, not of Home Savings. We agree with the district court that this argument must be rejected because before reaching any issue of American Bankers's liability, the Court must necessarily reach the issue of Home Savings's liability.

In *Conoco, Inc. v. Republic Ins. Co.,* 819 F.2d 120, 123 (5th Cir.1987), this Court found that third parties were precluded from obtaining rights under an insurance policy which contained a clause barring a third-party suit. The clause was similar to the one at issue here and provided: " . . . no person shall acquire any right against this Company by virtue of this insurance without the express consent of this Company." The *Conoco* court relied in part on the holding in *Cumis Ins. Society,* 480 S.W.2d at 766–67, in which the court, in holding that a third-party beneficiary could recover under an indemnity clause to an insurance contract, expressly noted that had the contract contained a clause forbidding a third-party to claim under it, the third-party beneficiary would have had no right of recovery.

Unlike the contract in *Cumis,* the indemnity clause found in the contract in this case does not delineate the relationship between the contractual parties and the third-party beneficiary. Nor is there anything in the indemnity clause which suggests that Talman could sue American Bankers. Accordingly, we find that the express terms of the clause in the Insurance Policy which

prohibits making American Bankers a party to actions to determine Home Savings's liability precludes recovery by Talman. We now examine whether that clause has been modified by the Settlement Agreement to allow such a suit by a third-party beneficiary.

### 2. *Settlement Agreement*

Talman contends that American Bankers waived the effect of any clause barring third-party beneficiary claims when it subsequently modified the policy. Talman contended that the Insurance Policy was modified to keep the insurance in force solely for the benefit of the secondary investors, in exchange for Home Savings's agreement to indemnify American Bankers for payments made to secondary investors.

■ Although Talman is not mentioned by name in the Settlement Agreement, Talman contends that paragraphs 4 and 5 of that agreement, spelled out in the BACKGROUND section of this Opinion, support its argument that it should be considered a third-party beneficiary of that agreement.[6]

■ Paragraphs 4 and 5 of the Settlement Agreement permitted Home Savings to meet its obligation to Talman under the Participation Agreement to provide insurance while eliminating any risk to American Bankers under the policy, unless Home Savings could not meet its indemnity obligations to American Bankers. Talman contends that Home Savings could not be the beneficiary of this arrangement since it undertook to indemnify American Bankers in exchange for keeping the insurance in force. Talman contends that the only possible beneficiary was Talman and the other secondary market investors. Indeed, Paragraph 5 of the Settlement Agreement makes explicit reference to payments made

---

**6.** A third-party creditor beneficiary contract exists:

> Where a promisee in a contract owes a debt or obligation to a third-party and contracts for a performance to be rendered to the third-party with the intention that such performance will discharge the debt thus owed by the promisee, the third-party is a creditor beneficiary of the promise, entitled to enforce it in an action at law. . . .

*Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha,* 342 F.Supp. 292, 295 (S.D.Tex.1972) (quoting Simpson, Contracts § 116 (1965 ed.)). *See also MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 11 (Tex.App.1988); *Economy Forms v. Williams Bros. Const.,* 754 S.W.2d 451, 456 (Tex. App.1988).

by American Bankers to the secondary market investors.

Had the language of Paragraphs 4 and 5 been found in the original Insurance Policy, Talman's argument might be more persuasive. We find, however, that the Settlement Agreement does not show any clear intent to change the terms of the Insurance Policy (which we have already held specifically precludes Talman from suing American Bankers) to make Talman a third-party beneficiary with rights under the contract. The Settlement Agreement makes no express reference to Talman. Nor was American Banker's performance to be rendered directly to Talman; Home Savings was to make all claims under the contract after complying with the express provisions of the Insurance Policy for determining "losses". Indeed, this is the procedure that was followed subsequent to the Settlement Agreement. Moreover, Talman was not given any rights to enforce the Settlement Agreement against American Bankers.

Talman asks: "Who was the Settlement Agreement to benefit if not Talman and the secondary market investors?" We find that the Settlement Agreement was entered into with the intent to benefit the contracting parties. As a result of the Settlement Agreement, both parties avoided protracted and expensive litigation. Home Savings also benefitted by keeping insurance from American Bankers in force on its loan agreements so that secondary market investors such as Talman would not be able to find Home Savings in default of the Participation Agreement. American Bankers benefitted from the protection of indemnification.

We hold that the Settlement Agreement does not suffice to qualify Talman as a third-party beneficiary. Talman has not met the elements of the *Hellenic* test for establishing third-party beneficiary status. The Settlement Agreement does not plainly show that Home Savings and American Bankers contracted to benefit Talman, nor does it show that they necessarily intended

for Talman to benefit by their written agreements.

### 3. *Commitments of Insurance*

■ The Commitments of Insurance have blanks for the Lender (Home Savings) and the Borrower (the purchaser of the mobile home). The Commitments make no reference to an investor in mobile homes such as Talman. We find that the Commitments of Insurance do not show a clear intent on the part of the contracting parties to benefit third-party investors such as Talman. The Commitments of Insurance are nothing more than agreements between American Bankers and Home Savings to insure payments upon the loan.

### CONCLUSION

The district court did not err in dismissing Talman's Complaint, and its decision is AFFIRMED for the reasons stated in this opinion.[7]

---

7. We note that Talman's remedy must be limited to the terms of the Participation Agreement which delineates Talman's avenues of recourse in the event of Home Savings's insolvency.