# UNITED STATE COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 96-20441

---

MARINE INDEMNITY INSURANCE COMPANY OF AMERICA,
Plaintiff,

LOCKWOOD WAREHOUSE & STORAGE, ET AL,
Defendants,

MAXWELL HOUSE COFFEE COMPANY, KRAFT GENERAL FOOD, INC.,
Defendants - Appellants

VERSUS

KRAFT GENERAL FOODS, INC; GRAND LOCKWOOD PARTNERS LIMITED
PARTNERSHIP; THIRD COAST PACKAGING; IGI BAYCHEM, INC; OXID, INC.; RDA
INTERNATIONAL, INC.; VISTA CHEMICAL,
Defendants - Appellees

VERSUS

ENTERPLAST, INC.; H. MUEHLSTEIN & CO.,
Intervenor Defendants - Appellants

---

Appeals from the United States District Court
for the Southern District of Texas

---

June 4, 1997

Before POLITZ, and DeMOSS, Circuit Judges, and JUSTICE,[*] District Judge.

JUSTICE, District Judge:

This appeal arises out of an interpleader action brought by Marine Indemnity Insurance Company of America ("Marine Indemnity") to resolve conflicting claims for insurance proceeds under an insurance policy issued by it to Lockwood Warehouse & Storage ("Lockwood"). The district court, upon recommendation of a special master, determined the issues of insurable interests,

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

calculation of damages, and priority of claims, and entered final judgment. Defendants Maxwell House Coffee Company ("Maxwell") and Kraft General Foods, Inc. ("Kraft"), in addition to intervenor-defendants Enterplast, Inc. ("Enterplast") and H. Muehlstein & Company ("Muehlstein"), appeal the district court's order and seek review of its interpretation of the Marine Indemnity insurance policy. We affirm in part and reverse in part the district court's judgment.

## I.        Proceedings Below

In November 1993, a fire destroyed a warehouse owned by Grand Lockwood Partners Limited Partnership ("Grand Lockwood"). It was managed and leased by Lockwood at the time of the fire. Property worth millions of dollars that was stored in the warehouse was also destroyed by the fire. Lockwood maintained insurance coverage with Marine Indemnity for certain property inside the warehouse. Numerous owners of property stored inside the warehouse made claims against Marine Indemnity for the value of their damaged property. Because the claims exceeded the limits of the insurance policy, Marine Indemnity instituted this interpleader action.

In October 1995, the district court determined that the amount of insurance available under the Marine Indemnity policy was $1,275,610, plus accrued interest. The court ordered that Marine Indemnity pay this amount into the court's registry. The district court appointed a magistrate judge to act as special master and recommend findings of facts and conclusions of law on the issues of insurable interests, calculation of damages, and priority of claims. Issues concerning the causation of the fire and the liability of the parties are the subjects of a separate proceeding pending in a Texas state court action. After holding a hearing on the parties' conflicting claims to the interpleaded funds and considering briefs submitted by the parties setting forth their respective positions, along with affidavits, documents, and deposition excerpts, the special master issued her report,[2] which the district court adopted. On March 4, 1996, after considering various motions and objections to the special

---

[2] The special master also issued an errata sheet which she incorporated into her report and recommendation and which corrected several factual errors contained in the report.

master's report, the district court entered final judgment ordering the disbursement of the interpleaded funds. Kraft subsequently filed a motion for new trial which was denied. This appeal followed.

This appeal raises two primary disputes concerning the district court's disbursement of the Marine Indemnity insurance proceeds. First, intervenor-defendants Enterplast and Muehlstein object to the district court's order denying them any recovery from the interpleaded funds. Second, defendants Kraft, Maxwell, and Vista Chemical Company, who all recovered only a portion of their uninsured losses under the court's allocation of policy proceeds, contest the district court's award from the interpleaded funds, of $158,430.76, plus accrued interest, to Grand Lockwood, for the costs Grand Lockwood incurred in removing debris from the warehouse and cleaning up the warehouse property site. Each of these claims shall be addressed, in turn, below.

## II.    Analysis

### A.    Enterplast and Muehlstein's Right to Recover

The special master found two independent bases for denying both Enterplast and Muehlstein any recovery from the interpleaded funds. First, the court found that, given Enterplast's and Muehlstein's bailment relationship with sublessees of Lockwood, the Marine Indemnity policy provisions governing covered property barred the two entities from recovery. Lockwood had subleased space in the warehouse to Ultra Warehouse ("Ultra") and Lance Cowan, doing business as Shippers International ("Shippers"), who each stored, respectively, the property of Muehlstein and Enterplast.

The Marine Indemnity policy provided coverage of the following property:

> (A)     Personal Property of the Insured pertaining to the conduct of the                            Insured's business.
> (B)     Personal Property of others which is directly connected with the                                   Insured's business while in the care, custody or control of the Insured, and for which the Insured is responsible, or for which the Insured has agreed in writing prior to loss to insure.

3

> (C)     Real Property of the Insured.
> (D)     To the extent of the Insured's business interests only, improvements and betterments to buildings occupied, but not owned by the Insured.

The special master determined that the policy had three coverage requirements with respect to the property belonging to those other than Lockwood that was stored in the warehouse. First, the property must have been "directly connected" with Lockwood's business. Second, the property must have been in the "care, custody, or control" of Lockwood. Third, Lockwood must either have been "responsible" for the property or have had agreed in writing, prior to the fire, to insure the property.

In construing the first requirement, the special master determined that the policy covered the property of those who stored property directly with Lockwood, but did not cover the property of those, including Enterplast and Muehlstein, who stored property with a sublessee of Lockwood. Because Enterplast and Muehlstein did not enter into an agreement with Lockwood for the storage of property, the court adjudged that neither entity could establish that it had a direct relationship or involvement with Lockwood, and thus also concluded that their property could not be found to have been "directly connected" with Lockwood's business.

The special master also found that the third coverage requirement barred Enterplast and Muehlstein from recovery under the Marine Indemnity policy, in that they failed to establish that Lockwood was "responsible" for their property. Evidence was presented to the court that Muehlstein entered into a warehouseman's agreement with Ultra for the storage of its property. Under this agreement, Ultra disavowed responsibility for loss or damage to Muehlstein's goods, however caused. Moreover, evidence was adduced that Ultra and Shippers each entered into a sublease agreement with Lockwood, which stated, in each instance, that the sublease incorporated all terms and conditions of the master lease between Grand Lockwood and Lockwood. The master lease provided:

> Lessor and Lessee, in their own behalf and in behalf of their insurers, each hereby waive any and all claims which such party may have against the other party during the Term for any and all loss of, or damage to, any of such party's property located within or upon, or constituting a part of the Leased Premises or the Building to the extent that such loss or damage is or could have been covered by a standard

4

Texas fire and extended coverage insurance policy, regardless of cause or origin, including the negligence (sole or otherwise), of such party hereto.

Since Ultra's and Shippers' leases with Lockwood, by incorporating the terms of the master lease, exonerated Lockwood and its insurers from any damage claims for Ultra's and Shippers' property, the special master concluded that, based on these waiver of liability provisions, Lockwood was not responsible for the goods of Ultra and Shippers or the goods of their bailees, including Muehlstein and Enterplast.

The district court held that, even if it were to reject the incorporation of the master lease's waiver of liability provision, Lockwood was not "responsible" for Muehlstein's and Enterplast's property, pursuant to the Texas law of leases and bailments. Under Texas law, a bailment is a delivery of goods to another which creates a duty of trust on the part of the bailee to return the deposited goods as directed. Braniff Airways, Inc. v. Exxon Co. U.S.A., 814 F.2d 1030, 1038 (5th Cir. 1987). A bailee has the duty to exercise ordinary care over the goods and is therefore "responsible" for the bailor's goods. Allright, Inc. v. Elledge, 515 S.W.2d 266, 267 (Tex. 1974); Ampco Auto Parks, Inc. v. Williams, 517 S.W.2d 401, 403 (Tex. Civ. App.--Dallas 1974, writ ref'd n.r.e.); West v. Slaughter, 384 S.W.2d 185, 187 (Tex. Civ. App.--Waco 1964, writ ref'd n.r.e.). In contrast, a lease is "a transfer of interest in and possession of property for a prescribed period of time in exchange for an agreed consideration called 'rent.'" State Nat'l Bank v. United States, 509 F.2d 832, 835 (5th Cir. 1975). The lessor has the duty of ordinary care in maintaining the premises it controls, but does not have a duty to exercise care regarding the lessee's property stored on the premises. See Jones v. Houston Aristocrat Apartments, Ltd., 572 S.W.2d 1 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ ref'd n.r.e.). The lessor is therefore not "responsible" for the property of the lessee. The district court found that the sublease agreement between Ultra and Lockwood, and also that between Shippers and Lockwood, established a lessor-lessee relationship. Consequently, the court found that, under Texas law, Lockwood was not responsible for the property of Ultra or Shippers, or the property of their bailors, Muehlstein and Enterplast.

The special master also denied recovery to Muehlstein and Enterplast, based on its finding that

5

Muehlstein's and Enterplast's losses were covered by the Marine Indemnity policy's "other insurance" clause, which, together with considerations of equity, foreclosed recovery. The "other insurance" clause provided: "If at the time of loss, or damage, there is available to a named or unnamed insured or any other interested party any other insurance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over such other insurance." The court then held that, because the amount of claims to the policy exceeded the amount of interpleaded funds, those claimants who were not covered by other insurance should have first priority to the funds.

Muehlstein, the court found, lost $547,546.63 worth of goods in the fire and suffered a net sales loss of $1,078,233. The court concluded that, since Muehlstein recovered $750,000 from its own insurance company, Phoenix Assurance, Muehlstein had been fully compensated for the loss of its goods by other insurance, and, therefore, could not recover additional money from the interpleaded funds. Muehlstein objected to this finding in the special master's report and recommendation, maintaining that the majority of the proceeds it received from Phoenix Assurance covered its lost profits, but did not cover the value of its lost inventory. In this connection, Muehlstein contends that it suffered an uninsured loss of $1,078,233 minus $750,000, or $328,233. The district court overruled Muehlstein's objection, but did not directly address Muehlstein's claim regarding lost profits.

The court also found that Enterplast was fully compensated for the actual cash value of its property. Enterplast submitted a claim of $370,502 for the loss of its goods in the fire, of which its insurance carrier paid $347,911.49. It was also determined by the court that Enterplast had stored goods in the warehouse with a fair market value of $339,445. Enterplast did not object to the court's factual findings. Instead, Enterplast objected to the court's decision that those entities storing uninsured property in the warehouse with uninsured claims had first priority to the interpleaded funds. The district court overruled Enterplast's objection.

Enterplast and Muehlstein argue on appeal that the district court erred in denying them

recovery of the interpleaded funds. They contend that they meet all three prerequisites to recovery under the Marine Indemnity policy: first, that the goods they stored in the warehouse were directly connected with Lockwood's business; second, that the goods were in the care, custody, or control of Lockwood; and finally, that Lockwood was responsible for the goods. Further, Muehlstein argues that the district court erred in concluding that Muehlstein did not suffer an uninsured loss, and therefore fell into error in denying it recovery on this basis.

We review conclusions of law de novo. Phillips Petroleum Co. v. Best Oilfield Services, Inc., 48 F.3d 913, 915 (5th Cir. 1995). We review the factual findings of the special master, adopted by the district court, for clear error. Fed. R. Civ. P. 52(a); see also Sherri A.D. v. Kirby, 975 F.2d 193, 207 n.25 (5th Cir. 1992). The district court's finding concerning the priority of claims (to the extent that the priority of claims was not controlled by policy language or controlling law) is neither a conclusion of law nor a factual finding, but is, instead, an equitable decision. See Bricks Unlimited, Inc. v. Agee, 672 F.2d 1255, 1261 (5th Cir. 1982) ("In determining the order of distribution of the interpleaded funds, we sit as a court of equity, and possess the remedial flexibility of a chancellor in shaping our decree so as to do complete equity between the parties."); see also American Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir.1990) ("[I]t is well recognized that interpleader is an equitable remedy . . . ."); Fulton v. Kaiser Steel Corp., 397 F.2d 580, 583 (5th Cir. 1968) ("Interpleader generally is a suit in equity which invokes equitable principles."). Hence, we review the priority of claims finding for abuse of discretion. Based on these standards of review, we affirm the district court's judgment barring Muehlstein and Enterplast from recovery of the interpleaded funds. Specifically, we affirm the district court's holding that Lockwood was not responsible for the property of Muehlstein and Enterplast under the Marine Indemnity policy. Further, we find that the court did not commit clear error in finding that Muehlstein and Enterplast were fully compensated for their losses, and that the court did not abuse its discretion in ruling that those with uninsured losses should receive priority over Muehlstein and Enterplast to the limited interpleaded funds.

          1.       Lockwood's responsibility under the insurance contract. Both Muehlstein and

7

Enterplast contend, on appeal, that Lockwood was responsible for their property by the terms of the insurance policy, since it maintained control over the warehouse: that is, by directing and performing warehouse maintenance, repairs, security, housekeeping, and fire protection, among other things, Lockwood thereby assumed obligations and duties with regard to all property in the warehouse. Muehlstein and Enterplast argue that the negligent performance of these duties by Lockwood rendered it, as landlord, liable, and hence responsible, for the destruction to their property.

We agree with the district court that Texas law, which governs this case, does not support the bailors' interpretation of the term "responsible" in the insurance contract. Pursuant to Texas law, responsibility for goods is dependent on the existence of a bailor-bailee relationship. A bailee, in contrast to a lessor, assumes a duty of care with regard to both the premises and the goods in its possession. As a lessor, Lockwood had a duty to exercise care respecting the portions of the warehouse it controlled,[3] but did not have a general duty to exercise care as to the sublessees' property stored on the premises or care with relation to the property of the sublessees' bailors. Thus, as lessor, Lockwood was not responsible for the property of the Muehlstein and Enterplast.

In support of its argument, Enterplast cites to the case of Brown v. Frontier Theaters, Inc., 369 S.W.2d 299 (Tex. 1963). In Brown, the Texas Supreme Court held that, if a landlord retains control over a portion of the leased premises, "the landlord is charged with the duty of ordinary care in maintaining the portion retained so as to not damage the tenant." Id. at 303. Frontier Theaters was found to be in control of the upper portion of the theater and, after the court ruled that Frontier had been negligent in maintaining that portion of the theater, it held Frontier liable for damages to the tenant's property in the lower portion of the theater. Enterplast confuses responsibility for the premises with responsibility for property stored on the premises. Contrary to Enterplast's argument,

_____

[3] Texas law provides that, "[g]enerally, a landlord who retains control over a part of the premises that the tenant is entitled to use owes a duty to exercise ordinary care" over such commonly used premises. Stein v. Gill, 895 S.W.2d 501, 502 (Tex. App.--Fort Worth 1995, no writ). Because we find that, regardless of whether Lockwood exercised control over the warehouse premises, Lockwood was not responsible for the property of Muehlstein and Enterplast, we need not and do not rule on the issue of Lockwood's control and corresponding duty of care over the premises.

8

Frontier Theaters only relates to a lessor's duty with regard to the portion of the leased premises it retained. If a lessor does not fulfill its duty of care with respect to the premises it controls and thereby causes damage to the lessee's property, regardless of whether the property is stored on the retained premises or unretained premises, the lessor may be held liable for the property damage. But a lessor's liability for damaged property stored on the premises arises only out of its responsibility to maintain the lessor's retained part of the premises with due care; it does not ensue from a responsibility to maintain with due care the property stored by others inside the premises. Only a bailee, not a lessor, assumes this latter responsibility.

Finally, Muehlstein's and Enterplast's argument that Lockwood was responsible for their property is barred by the exculpatory clause contained in the master lease and incorporated into the sublease agreement between Lockwood and Ultra, as well as between Lockwood and Shippers. The exculpatory clause provides that the lessor is not liable for any damage to the lessee's property, to the extent that the property damage is or could have been insured. Under Texas law, exculpatory clauses will ordinarily be enforced, if they are between private persons who bargain from positions of equal strength. Crowell v. Housing Authority, 495 S.W.2d 887, 889 (Tex. 1973). The parties do not contend that the exculpatory clause is void as a matter of public policy; instead, they contend that, although the clause may apply to Ultra and Shippers, the clause does not apply to them, as bailors of Ultra and Shippers. This claim is unavailing. If Lockwood, pursuant to the exculpatory clause, waived its liability for damage to the property of Ultra and Shippers, Lockwood cannot then be said to be responsible for the goods that they, as bailees, stored on behalf of others, including Muehlstein and Enterplast.

2.     Priority to the interpleaded funds. In its initial brief, Enterplast does not contest the district court's denial of recovery to Enterplast on the ground that it was fully compensated for its losses and should therefore receive last priority to the interpleaded funds. As a result, Enterplast abandons its right to raise this issue on appeal. United Paperworkers Int'l Union v. Champion Int'l Corp., 908 F.2d 1252, 1255 (5th Cir. 1990). Muehlstein, on the other hand,

9

continues to maintain that it was not fully compensated for the losses it suffered with respect to the stored goods that were destroyed by the warehouse fire, and that, consequently, it suffered a loss which the Marine Indemnity policy should compensate. The Marine Indemnity policy covers only the value of lost property. Muehlstein's policy with Phoenix Assurance, on the other hand, covers net sales value. Muehlstein presented evidence that Phoenix Assurance paid Muehlstein the $750,000 limits under the policy for "losses to Muehlstein's inventory based on net sales value."

Muehlstein contends, first, that the entire $750,000 it recovered under the Phoenix Assurance policy covered only its lost profits and did not cover the value of the stored goods. In the alternative, Muehlstein maintains that, if net sales loss includes a component of both lost profits and the value of its stored goods, then, because Muehlstein only recovered 69.6% of its claim from Phoenix for net sales loss, the court should have allocated this percentage to each of the components of Muehlstein's claim. Thus, Muehlstein argues that the trial court should have found that Muehlstein did not recover 30.4% of the actual value of its stored goods, or $174,662.60.[4]

Muehlstein, as a claimant to the interpleaded funds, had the burden of establishing by the preponderance of the evidence that is was entitled to recover. After reviewing the record and considering the arguments of the parties, we find that it was not clearly erroneous for the special master to have found that Muehlstein was fully compensated for the value of its lost goods. Moreover, in light of the fact that the claims exceeded the amount of the interpleaded funds, it was not an abuse of discretion to give those who were not fully compensated first priority to the funds.

### B. Grand Lockwood's Right to Recover

Kraft, Maxwell, and Vista Chemical (referred to collectively as "Kraft") object to the district court's award of $158,430.76 to Grand Lockwood, for the costs Grand Lockwood incurred in removing debris from the warehouse and cleaning up the warehouse property site after the fire.

---

[4] Muehlstein erroneously uses the figure of $574,546.63 as the amount of its inventory losses in arriving at the final uninsured loss figure of $174,662.60 ($574,546.63 x 30.4%). The special master, however, found that the amount of inventory losses was $547,546.63. Accordingly, if only 69.6% of Muehlstein's inventory costs were paid by other insurance, Muehlstein is left with an uninsured loss of $166,454.18 ($547,546.63 x 30.4%), not $174,662.60.

Grand Lockwood contends that Lockwood terminated its lease with Grand Lockwood and refused to clean up the warehouse site and remove debris from the premises, as it was obligated to do under the lease.

The Marine Indemnity policy contained two provisions governing debris removal and clean-up expenses. Section 13 provided:

> This policy is extended, subject otherwise to its full terms, conditions and limitations, to cover the Insured's expenses incurred in the removal of all debris of the property insured hereunder, at the premises where the loss occurs, which may be occasioned by loss or damage directly caused by any of the perils insured against in this policy . . . .

The "Debris Removal and Cost of Clean Up Extension" ("debris removal extension") provided:

> [I]n the event of direct physical loss or damage to the property insured hereunder, this Policy . . . also insures, within the sum insured
> (a) expenses reasonably incurred in removal of debris of the property insured hereunder destroyed or damaged from the premises of the Assured; and/or
> (b) cost of clean up, at the premises of the Assured, made necessary as a result of such direct physical loss or damage . . . .

The special master found that, after the fire, Grand Lockwood spent in excess of $384,000 to remove debris and clean up the warehouse premises. Taking into consideration the $5,000 deductible under the Marine Indemnity policy, the magistrate judge then concluded that Grand Lockwood incurred damages of $379,000 that were covered by the Marine Indemnity Policy. The district court, in adopting these findings, granted Grand Lockwood a pro rata portion of the interpleaded funds, thereby diminishing the pool of interpleaded funds available to the other parties with claims.

On appeal, Kraft contests the court's disbursement of interpleaded funds to Grand Lockwood on the following grounds: (1) the Marine policy does not provide coverage to Grand Lockwood; (2) claims for damaged property should receive first priority; (3) Lockwood did not present evidence that it established the condition precedent under the Marine policy, which requires that Lockwood give notice of its intent to claim recovery for debris removal or clean-up costs; and (4) Grand Lockwood failed to offer evidence that the debris removal expenses it incurred were related to the removal of

11

property insured under the policy.

Insurance policies are no exception to the rule that one for whose benefit a contract is made may enforce the contract. However, under Texas law, a presumption exists that parties intended to contract only for themselves. Talman Home Fed. Sav. & Loan Assoc. of Ill. v. American Bankers Ins., 924 F.2d 1347, 1351 (5th Cir. 1991). Because Grand Lockwood is not a party to the Marine Indemnity insurance contract, "it follows that [the Marine Indemnity insurance] contract will not be construed as having been made for the benefit of [Grand Lockwood] unless it clearly appears that this was the intention of the contracting parties." Id.; see also Resolution Trust Corp. v. Kemp, 951 F.2d 657, 662 (5th Cir. 1992). "If there is any doubt concerning the intent in this regard as it appears from the contract itself, such doubt should be construed against such intent." Talman, 924 F.2d at 1351 (quoting Republic Nat'l Bank, 427 S.W.2d 76, 80 (Tex. Civ. App.--Dallas 1968, writ ref'd n.r.e.)).

The first provision of the Marine Indemnity policy concerning debris removal costs explicitly states that the policy covers the "Insured's expenses" for debris removal. The policy also expressly states that Lockwood is the "Insured." The second provision relating to debris removal, which is contained in the debris removal extension, does not state who can claim debris removal costs. While the debris removal extension does not explicitly exclude coverage to a third party, it also does not explicitly provide coverage to a third party. Nor do any other portions of the insurance contract demonstrate that Grand Lockwood was intended to be a beneficiary under the debris removal and clean-up cost provisions. In contrast, the property coverage provisions of the contract, by referring to the property of "others," specifically provide that certain third parties storing property in the Lockwood warehouse were intended beneficiaries under the policy.

Moreover, the debris removal extension contains a requirement that the "Assured shall give notice to the Underwriters of intent to claim for cost removal of debris or cost of clean up . . . ." In effectuating the intent of the parties to a contract, "[i]t is the duty of the Court to construe the contract as an entire instrument, and to consider each part with every other part so that the effect and meaning of one part on any other part may be determined." Steeger v. Beard Drilling, Inc., 371

S.W.2d 684, 688 (Tex. 1963); see also Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co., 76 F.3d 89, 91 (5th Cir. 1996) (Texas law requires that the court read all provisions of a contract together in order to give each provision its intended effect). The notice requirement in the debris removal extension is rendered meaningless, unless the parties intended that only Lockwood could claim expenses for debris removal and clean-up costs. In order to give effect to the notice requirement, which requires that Lockwood provide notice to Marine Indemnity of its intent to claim debris removal and clean-up costs, we find that Grand Lockwood was not entitled to make a claim for these costs. In summary, Grand Lockwood has failed to meet its burden of proof in establishing that it was an intended beneficiary under the debris removal and clean up provisions of the Marine Indemnity contract, and, for this reason, we reverse the judgment of the district court.

## III.     Conclusion

In light of the foregoing, we affirm the district court's judgment that Muehlstein and Enterplast are not entitled to recover under the Marine Indemnity policy. We reverse the district court's judgment awarding interpleaded funds to Grand Lockwood and remand for a recalculation and redistribution of the interpleaded funds.